1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

United States District Court
Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SARAH PERATA,

                    Plaintiff,

        v.

CITY AND COUNTY OF SAN
FRANCISCO,

                    Defendant.

Case No.  21-cv-02819-TSH

**ORDER GRANTING IN PART AND
DENYING IN PART MOTION FOR
SUMMARY JUDGMENT**

Re: Dkt. Nos. 64, 99

## I.    INTRODUCTION

Pending before the Court is Defendant City and County of San Francisco's Motion for Summary Judgment, or in the alternative, Partial Summary Judgment.  ECF No. 64.  Plaintiff Sarah Perata filed an Opposition (ECF No. 94), and Defendant filed a Reply (ECF No. 100). Plaintiff also has a pending Motion to Remove Incorrectly Filed Documents.  ECF No. 99.  For the reasons stated below, the Court **GRANTS IN PART AND DENIES IN PART** the motion for summary judgment.[1]  Additionally, the Court **GRANTS** Plaintiff's Motion to Remove Incorrectly Filed Documents.

## II.    BACKGROUND

### A.    Factual Background

Plaintiff Sarah Perata was hired in March 2008 as an H3 level 1 emergency medical technician at the San Francisco Fire Department ("SFFD").  ECF No. 111, Defendant's Reply to Plaintiff's Amended Response to Separate Statement of Undisputed Facts, Defendant's

---

[1] The parties consent to magistrate judge jurisdiction pursuant to 28 U.S.C. § 636(c).  ECF Nos. 58, 59.

Undisputed Facts ("SOF") No. 11.[2]  Plaintiff's spouse, Gregg Perata, also works for the SFFD. *See* SOF No. 12.  Plaintiff gave birth to her first child in September 2010 and took leave pursuant to the Family Medical Leave Act ("FMLA") after that birth.  SOF Nos. 14, 15.  Plaintiff gave birth to her second child in December 2013 and took FMLA leave after that birth.  SOF Nos. 17, 18.

In July 2016, Plaintiff was provisionally promoted to acting H33 Rescue Captain to instruct at the Division of Training on Treasure Island.  SOF No. 21.  Plaintiff remained in the acting Rescue Captain role at Treasure Island until February 2020.  SOF No. 24.

In approximately 2018, Nicholas Payne became the Emergency Medical Services Training section chief for Treasure Island.  SOF No. 35.  In July 2019, Plaintiff and her husband informed Payne that they were having a third child.  SOF No. 36.  On October 3, 2019, Plaintiff emailed Payne that she felt "targeted and singled out" by comments "coming from [Payne], through other people," related to her uniform during her pregnancy, citing "'uniform' issues (including being told to wear my husband's uniform.)"  SOF No. 50; ECF No. 74, Declaration of Nicholas Payne ("Payne Decl.") Ex. A.

In December 2019, Plaintiff gave birth to her third child.  SOF No. 62.  On December 13, 2019, SFFD issued a new eligibility list for permanent H33 positions and Plaintiff was ranked number one.  SOF No. 67.  Plaintiff came in on January 6, 2020 and taught a class at Treasure Island.  SOF No. 64.  On February 10, 2010, Plaintiff received a call from Fire Chief Janine Nicholson offering her a conditional promotion to H33 Rescue Captain.  SOF No. 72.  The promotion was subject to a six-month probationary period.  SOF No. 74.

On February 12, 2020, Chief Sandy Tong, who led the SFFD Emergency Medical Services Division where Plaintiff worked, told Plaintiff she was being transferred from Treasure Island to Station 49.  *See* SOF 3, 87.  On February 13, 2020, Plaintiff went with her husband and baby to Treasure Island to pack up her items.  *See* SOF No. 87; ECF No. 111, Plaintiff's Additional Material Facts ("AMF") No. 108.  Payne emailed Plaintiff on February 19, 2020 asking if she had mistakenly packed up certain training binders.  SOF No. 93.  Plaintiff wrote back that she would

---

[2]  This document includes Defendant's statement of material facts, Plaintiff's additional statement of material facts, and the parties' respective responses.

United States District Court
Northern District of California

1

2

look to see if she had any department materials, but that she believed the materials she had were her own. Payne Decl. Ex. D; SOF No. 94.

3

4

5

6

The Department of Labor ("DOL") contacted Plaintiff in April 2020 to ask if she had any issues with lactation at SFFD. SOF No. 115. Around the same time, Defendant also learned about the DOL inquiry when the DOL investigator contacted Jesusa Bushong, SFFD's human resources personnel officer. SOF No. 116.

7

8

9

10

11

12

13

14

15

16

17

As part of scheduling additional trainings for her new promotion, Plaintiff exchanged emails with colleague Zachary Tibbits in June 2020. ECF No. 98, Declaration of Jordanna G. Thigpen ("Thigpen Decl.") Exs. 6, 7, 29. Plaintiff requested adjustments to her training dates based on childcare needs. *Id.* On June 16, 2020, Tibbits responded that the Department of Training considered her need for childcare, spouse's employment with the department, and her FMLA status in making her schedule and offered to make possible adjustments. Thigpen Decl. Ex. 29. Plaintiff responded on the same day that she would be "perusing union representation for possible EEO violation and retaliation" as she understood Tibbits to be "denying my available dates based on my marital status and FMLA status." *Id.* On June 23, 2020, Payne sent Plaintiff an email regarding training shift scheduling, alleging she had scheduled herself for a training. Payne Decl. Ex. E.

18

19

20

21

22

23

24

25

There is a dispute as to who sent the text message, but on June 24, 2020, Payne received a text message from what appeared to be Plaintiff's cell phone number with a screenshot of an email he sent, and another text stating "New passive aggressiveness by Nick." SOF Nos. 135, 136; Payne Decl. Exs. G, I. Plaintiff's new supervisor at Station 49, Chief Niels Tangherlini, received a message from what appeared to be Plaintiff's phone number stating, "I fucking hate this place." SOF No. 141; ECF No. 70, Declaration of Patrick D'Arcy ("D'Arcy Decl.") Ex. A. Multiple other coworkers received texts from what appeared to be Plaintiff's phone number stating, "I hate you," or "Fuck you." SOF Nos. 142-45; D'Arcy Decl. Ex. A.

26

27

28

Chief Tong asked Plaintiff to write an unusual occurrence report about the incident. SOF No. 145. In July 2020, Jeffrey Covitz was assigned to investigate the incident. SOF No. 150; ECF No. 69, Declaration of Jeffrey Covitz ("Covitz Decl.") ¶ 4. During his investigation, Covitz

United States District Court
Northern District of California

1

2

3

4

5

6

learned about a dispute regarding whether Plaintiff took training binders in February 2020 when she cleared out her desk.  SOF No. 152, 153; Covitz Decl. Ex. A.  Payne and colleague Jennifer Treff discussed the situation with Covitz.  *Id.*  Covitz wrote a memorandum directed to Fire Chief Nicholson regarding the issue.  AMF No. 120; Covitz Decl. Ex. A.  Chief Nicholson opened a second investigation into Plaintiff, based on Covitz's memorandum and the February 2020 training binders issue.  SOF No. 155; AMF No. 123.

7

8

9

10

11

12

13

Plaintiff contested Covitz's appointment as investigator based on having filed a complaint against Covitz regarding sexual harassment.  *See* SOF No. 156.  Covitz was replaced by Patrick D'Arcy as the investigator of the text messages issue.  SOF No. 158; D'Arcy Decl. ¶ 2.  SFFD appointed Marc Kasper as the investigator for the February 2020 training binders issue.  SOF No. 159; ECF No. 71, Declaration of Mark Kasper ("Kasper Decl.") ¶ 2.  Neither D'Arcy nor Kasper had knowledge of Plaintiff's communications with DOL or her EEO claims.  SOF No. 160; D'Arcy Decl. ¶ 3; Kasper Decl. ¶ 3.

14

15

16

17

18

There were conversations in August 2020 about returning Plaintiff and her husband to Treasure Island related to a DOL investigation into Plaintiff's FMLA leave.  *See* SOF No. 162.  Plaintiff expressed concerns that she was being harassed and retaliated against by coworkers related to the DOL FMLA investigation and as a result did not want to return to Treasure Island.  *See* SOF No. 163; ECF No. 68, Declaration of Jesusa Bushong, ("Bushong Decl.") Ex. O.

19

20

21

22

23

24

25

26

On November 23, 2020, D'Arcy issued a report finding that Plaintiff had violated SFFD rules related to the text message incident.  SOF No. 172; D'Arcy Decl. Ex. A.  Kasper also concluded that Plaintiff had violated SFFD rules related to the training binders issue.  SOF No. 175; Kasper Decl. Ex. A.  Chief Nicholson sent Plaintiff a letter on December 7, 2020, releasing her from the H-33 promotion position.  SOF No. 182.  Chief Nicholson testified that she had lost faith in Plaintiff based on the text message incident, the training binders incident, and Plaintiff's behavior surrounding those incidents.  ECF No. 98-28, Nicholson Dep. 131:10-132:14.  On December 8, 2020, Plaintiff took leave.  SOF No. 183.

27

28

On February 2, 2021, SFFD proposed a three-day suspension related to the binder incident.  SOF No. 185.  That suspension was withdrawn when Plaintiff provided SFFD relevant materials,

United States District Court
Northern District of California

although the parties dispute whether Plaintiff returned materials or printed out materials to which SFFD already had access.  SOF No. 186.  On March 4, 2021, SFFD proposed a seven-day suspension related to the text message investigation.  SOF No. 187.

**B.     Procedural Background**

On April 19, 2021, Plaintiff filed the instant action against Defendant City and County of San Francisco in this district alleging the following causes of action: 1) Gender Discrimination in Employment, 42 U.S.C. § 1983; 2) Pregnancy and Lactation Discrimination in Employment, 42 U.S.C. § 1983; 3) Gender Discrimination in Employment, Disparate Impact, 42 U.S.C. § 1983; 4) Gender Discrimination in Employment, Retaliation, 42 U.S.C. § 1983; 5) Pregnancy and Lactation Discrimination in Employment, Retaliation, 42 U.S.C. § 1983; 6) Interference with Family Medical Leave Act ("FMLA") Rights; 7) Retaliation, FMLA Rights; 8) Violation of Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 207(r); 9) Retaliation, FLSA, 29 U.S.C. § 215(a)(3); 10) Disparate Treatment in Violation of the Fair Employment and Housing Act ("FEHA") (Gender); 11) Employment Discrimination, Disparate Treatment in Violation of FEHA (Pregnancy and Lactation); 12) Harassment, Gender, California FEHA; 13) Harassment, Pregnancy and Lactation, California FEHA; 14) Failure to Prevent Discrimination and Harassment, California FEHA; 15) Retaliation, California FEHA; 16) Failure to Reasonably Accommodate Pregnancy, Cal. Gov't. Code § 12945(a), § 12945.2; 17) Failure to Reasonably Accommodate Lactation, Cal. Gov't. Code § 12945(a); and 18) Violation of Labor Code § 1102.5.  ECF No. 1.

On January 20, 2023, Defendant filed the instant Motion for Summary Judgment, or in the alternative, Partial Summary Judgment.  ECF No. 64.  On March 18, 2023, Plaintiff filed an Opposition to Defendant's motion.  ECF No. 94.  On March 30, 2023, Defendant filed a Reply. ECF No. 95, 95-1, Corrected ECF No. 100, 100-1.  On April 18, 2023, the Court ordered supplemental briefing on Defendant's evidentiary objections.  ECF No. 115.  Plaintiff filed a Reply on April 25, 2023 (ECF No. 116), and Defendant filed a Sur-Reply on May 2, 2023 (ECF No. 117).

On April 2, 2023, Plaintiff filed a Motion to Remove Incorrectly Filed Documents.  ECF No. 99.  The parties also filed a stipulation regarding erroneously filed documents, which the

1   Court granted on April 4, 2023.  ECF No. 105.  On April 11, 2023, the Court granted Plaintiff's

2   Administrative Motion to Supplement the Record after mistakenly omitting Plaintiff Sarah

3   Perata's Declaration.  ECF No. 112.  In sum, there have been multiple filings and orders related to

4   withdrawing, supplementing, or otherwise adjusting the summary judgment record.  *See, e.g.*, ECF

5   Nos. 99, 105, 112.  In the interest of clarity, the Court understands the following documents to be

6   relevant to the Court's determination of Defendant's Motion for Summary Judgment: ECF Nos.

7   64-82, 85-94, 98, 100, 106, 108-09, 111, 113-14, 116-17.

8                                         **III.   LEGAL STANDARD**

9           Summary judgment is proper where there is "no genuine dispute as to any material fact and

10   the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  The party moving

11   for summary judgment bears the initial burden of identifying those portions of the pleadings,

12   discovery and affidavits that demonstrate the absence of a genuine issue of material fact.  *Celotex*

13   *Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  Material facts are those that may affect the outcome

14   of the case, and a dispute as to a material fact is genuine if there is sufficient evidence for a

15   reasonable jury to return a verdict for the nonmoving party.  *Anderson v. Liberty Lobby, Inc.*, 477

16   U.S. 242, 248 (1986).

17           If the moving party meets its initial burden, the opposing party must then set forth specific

18   facts showing that there is some genuine issue for trial.  Fed. R. Civ. P. 56(c)(1); *Anderson*, 477

19   U.S. at 250.  All reasonable inferences must be drawn in the light most favorable to the

20   nonmoving party.  *Olsen v. Idaho State Bd. of Med.*, 363 F.3d 916, 922 (9th Cir. 2004).  However,

21   it is not the task of the Court "'to scour the record in search of a genuine issue of triable fact."

22   *Keenan v. Allan*, 91 F.3d 1275, 1279 (9th Cir. 1996).  The nonmoving party has the burden "to

23   identify with reasonable particularity the evidence that precludes summary judgment."  *Id.*  Thus,

24   "[t]he district court need not examine the entire file for evidence establishing a genuine issue of

25   fact, where the evidence is not set forth in the opposing papers with adequate references so that it

26   could conveniently be found."  *Carmen v. San Francisco Unified Sch. Dist.*, 237 F.3d 1026, 1031

27   (9th Cir. 2001); *Christian Legal Soc. Chapter of Univ. of California v. Wu*, 626 F.3d 483, 488 (9th

28   Cir. 2010) ("Judges are not like pigs, hunting for truffles buried in briefs.") (citations omitted).

United States District Court
Northern District of California

"While the evidence presented at the summary judgment stage does not yet need to be in a form that would be admissible at trial, the proponent must set out facts that it will be able to prove through admissible evidence." *Norse v. City of Santa Cruz*, 629 F.3d 966, 973 (9th Cir. 2010) (citing Fed. R. Civ. P. 56(c) ("An affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated.")).  Still, to survive summary judgment, the nonmoving party "must set forth non-speculative evidence of specific facts, not sweeping conclusory allegations." *Cafasso, U.S. ex rel. v. Gen. Dynamics C4 Sys., Inc.*, 637 F.3d 1047, 1061 (9th Cir. 2011) (citations omitted).  If the nonmoving party fails to identify such evidence, or if it offers evidence that is "merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson,* 477 U.S. at 249–50 (citations omitted).

## IV.   DISCUSSION

### A.   Motion to Remove Incorrectly Filed Documents

On April 2, 2023 Plaintiff filed a Motion to Remove Incorrectly Filed Documents ("Motion to Remove").  ECF No. 99.  Plaintiff specifically requested the Court remove mistakenly unredacted pages in the Declaration of Jordanna G. Thigpen (ECF No. 83) and Plaintiff's Response to Defendant's Separate Statement of Undisputed Facts (ECF No. 84).  On April 2, 2023, Plaintiff filed a Declaration of Jordanna G. Thigpen (ECF No. 98), and on April 5, 2023, Plaintiff filed an Amended Separate Statement of Undisputed Facts (ECF No. 109).  The Court understands these to be corrected versions of the two documents underlying Plaintiff's Motion to Remove.  Accordingly, the Court **GRANT**S Plaintiff's Motion to Remove, and **ORDERS** ECF No. 83 and ECF No. 84 be removed from the docket in their entirety.

### B.   Motion for Summary Judgment

#### 1.   Evidentiary Objections

##### a.   Judicial Notice

###### i.   Plaintiff's Request

Plaintiff requests the Court take judicial notice of 22 declarations filed in a San Francisco Superior Court Case, *Nicol Juratovac v. City and County of San Francisco*, No. CGC-21-591954.

ECF No. 82.  Defendant opposes on the basis that judicial notice of declarations in separate state court proceedings is improper under Federal Rule of Evidence 201.  ECF No. 100 at 9-10.

Under Federal Rule of Evidence 201(b), a "court may judicially notice a fact that is not subject to reasonable dispute because it: (1) is generally known within the trial court's territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned."  Fed. R. Evid. 201.  Federal courts may "take notice of proceedings in other courts, both within and without the federal judicial system, if those proceedings have a direct relation to the matters at issue."  *U.S. ex rel. Robinson Rancheria Citizens Council v. Borneo, Inc.*, 971 F.2d 244, 248 (9th Cir. 1992).

The Court will take judicial notice of the 22 declarations filed in the state proceeding, but not the truth of the facts contained therein.  *See M/V Am. Queen v. San Diego Marine Constr. Corp.*, 708 F.2d 1483, 1491 (9th Cir. 1983) ("As a general rule, a court may not take judicial notice of proceedings or records in another cause so as to supply, without formal introduction of evidence, facts essential to support a contention in a cause then before it."); *Greenlight Sys., LLC v. Breckenfelder*, No. 19-CV-06658-EMC, 2021 WL 2651377, at *4 (N.D. Cal. June 28, 2021), (taking judicial notice that a person filed a lawsuit in his own name and that he filed declarations, but not that the contents of the declarations were true), *aff'd,* No. 21-16245, 2022 WL 17222415 (9th Cir. Nov. 25, 2022); *Bias v. Moynihan*, 508 F.3d 1212, 1225 (9th Cir. 2007) (declining to take judicial notice of deposition excerpts in a separate case because they could be subject to reasonable dispute); *Azoulai v. BMW of N. Am. LLC*, No. 16-CV-00589-BLF, 2017 WL 1354781, at *4 (N.D. Cal. Apr. 13, 2017) (taking judicial notice of the existence of a declaration filed in a separate action but not the truth of its contents).  Accordingly, Plaintiff's Request for Judicial Notice is **GRANTED**.

### ii.    Defendant's Request

Defendant requests that the Court take judicial notice of the San Francisco Charter Section 10.101, as well as San Francisco Civil Service Commission Rules 303, 313, 314, and 317.  ECF No. 66.  Plaintiff does not oppose Defendant's request.

"The Court may take judicial notice of matters of public record, including official

United States District Court
Northern District of California

1    municipal enactments, ordinances and statutes."  *Chew v. City & Cty. of San Francisco*, No. 13-

2    CV-05286-MEJ, 2016 WL 631924, at *1 (N.D. Cal. Feb. 17, 2016) (citing *Santa Monica Food*

3    *Not Bombs v. City of Santa Monica*, 450 F.3d 1022, 1025 n.2 (9th Cir. 2006)), *aff'd*, 714 F. App'x

4    687 (9th Cir. 2017); *Molex v. City & Cty. of San Francisco*, 2012 WL 3042256, at *1 (N.D. Cal.

5    July 25, 2012), *aff'd*, 586 F. App'x 292 (9th Cir. 2014)).  Accordingly, Defendant's Request for

6    Judicial Notice is **GRANTED**.

### b.    Plaintiff's Witness Declarations

8         Defendant argues the Court may not consider witness declarations filed by Plaintiff

9    alongside her opposition because the witnesses were not timely disclosed during fact discovery.

10   ECF No. 100 at 2.  Defendant contests the admissibility of declarations submitted from Matthew

11   Bean, Teresa Cavanaugh, Anthony Chiacco, Heather Grives, Colleen Kellison, Joseph Kellison,

12   Angela Jovel, Chris Blair, and Christine Bartel.  *Id*.  Plaintiff argues that she supplemented her

13   disclosures timely, the witnesses were identified in discovery, any failure to disclose was

14   substantially justified or harmless, or, if sanction is warranted, the remedy is not exclusion of all

15   witnesses.  ECF No. 116.

16        Federal Rule of Civil Procedure ("Rule") 26(a) requires parties to disclose the names and

17   contact information of individuals "likely to have discoverable information – along with the

18   subjects of that information – that the disclosing party may use to support its claims or defenses."

19   Fed. R. Civ. P. 26(a).  Rule 26(e) imposes an affirmative obligation on a party to supplement its

20   initial disclosures "in a timely manner if the party learns that in some material respect the

21   disclosure or response is incomplete or incorrect, and if the additional or corrective information

22   has not otherwise been made known to the other parties during the discovery process or in

23   writing."  Fed. R. Civ. P. 26(e).  "If a party fails to provide information or identify a witness as

24   required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply

25   evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is

26   harmless."  Fed. R. Civ. P. 37(c)(1).

27        Plaintiff is not required to supplement her disclosures if the additional information has

28   "otherwise been made known to the other parties during the discovery process."  Fed. R. Civ. P.

United States District Court
Northern District of California

1
2
3
4
5
6
7
8
9
10
11
12
13

United States District Court
Northern District of California

14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

26(e).  A mere passing reference to a potential witness, however, is insufficient.  *See Ollier v. Sweetwater Union High Sch. Dist.*, 768 F.3d 843, 863 (9th Cir. 2014) ("That another witness has made a passing reference in a deposition to a person with knowledge or responsibilities who could conceivably be a witness does not satisfy a party's disclosure obligations.").  If the additional information was not provided and the disclosure is untimely, the burden is on Plaintiff to show that the failure was substantially justified or harmless.  *See R & R Sails, Inc. v. Ins. Co. of Pennsylvania*, 673 F.3d 1240, 1246 (9th Cir. 2012) (burden on party facing sanctions).  "Among the factors that may properly guide a district court's discretion in determining whether a violation of a discovery deadline is justified or harmless are: (1) prejudice or surprise to the party against whom the evidence is offered; (2) the ability of that party to cure the prejudice; (3) the likelihood of disruption of the trial; and (4) bad faith or willfulness involved in not timely disclosing the evidence."  *Adan v. Insight Investigations, Inc.*, No. 16-CV-2807-GPC-WVG, 2017 WL 4244877, at *2 (S.D. Cal. Sept. 25, 2017) (citation omitted).

The Court agrees with Defendant that Plaintiff's supplemental disclosure of an additional sixty-nine witnesses on the day before[3] discovery closed was not timely.  *Compare* ECF 106-1 (July 9, 2021 initial disclosure), *with* ECF No. 106-2 (April 29, 2022 supplemental disclosure); *see Markson v. CRST Int'l, Inc.*, No. 517CV1261SBSPX, 2021 WL 5969519, at *2 (C.D. Cal. Nov. 23, 2021) (finding supplementing witnesses on the last day of discovery was not timely and explaining underlying rationale).  The Court notes that Colleen Kellison, Teresa Cavanaugh, and Chris Blair were all identified in Plaintiff's deposition testimony provided to the Court.  *See* ECF Nos. 67, 98-29, S. Perata Dep. 163:11-164:9 (referencing Colleen Kellison); 92:15-24, 110:10-14 (referencing Chris Blair); 147:21-148:7 (referencing Teresa Cavanaugh).  The Court finds that, even if required to disclose, Defendant was not prejudiced or surprised as to Chris Blair and Colleen Kellison.  Chris Blair works for Defendant, was mentioned in the Complaint, and

---

[3] Both sides state that Plaintiff served her amended initial disclosures on April 28, 2022, the day before the April 29, 2022 close of fact discovery. ECF No. 100 at 2; ECF No. 116 at 4.  The Eliasoph Declaration, however, states in paragraph 4 that Defendant received them on April 29, 2022, and the amended initial disclosures are dated April 29, 2022.  ECF No. 67, Declaration of Ian Eliasoph ("Eliasoph Decl.") Ex. B.  The difference between April 28 and April 29 is not material to the Court's decision.

Plaintiff's testimony notes that he was a witness to some events.  ECF No. 1 ¶¶ 84, 91.  Colleen

Kellison was identified with particularity by Plaintiff as having reported lactation issues to DOL.

*See* S. Perata Dep. 163:11-164:9.  The Court agrees with Defendant, however, that Plaintiff's

reference to Cavanaugh is only in passing and Plaintiff has not otherwise met her burden to show

that the failure to timely supplement regarding Cavanaugh was substantially justified or harmless.

*See* S. Perata Dep. 147:21-148:7.  Further, the Court agrees that Plaintiff did not sufficiently

identify Anthony Chiacco, Heather Grives, Joseph Kellison, Angela Jovel, or Christine Bartel, nor

meet her burden of substantial justification or harmlessness.[4]

Plaintiff also argues that at least some portions of the affidavits are "solely for

impeachment."  *See* Fed. R. Civ. P. 26(a)(1)(A)(i).  The Court finds that Plaintiff's

characterization of the declarations, or portions thereof, as solely for impeachment is inaccurate

given the substance of the testimony.  *See Lil' Man In The Boat, Inc. v. City & Cty. of San

Francisco*, No. 17-CV-00904-JST, 2019 WL 8263440, at *4 (N.D. Cal. Nov. 26, 2019)

(contrasting impeachment evidence as offered to discredit a witness with substantive evidence

offered to prove the truth of a matter and excluding a witness declaration on a motion for summary

judgment), *aff'd,* 5 F.4th 952 (9th Cir. 2021).

The Court also notes that even if the Court were to consider the declarations, their value is

limited.  "[E]vidence that the defendant has made disparaging remarks about the class of persons

to which plaintiff belongs [ ] may be introduced to show that the defendant harbors prejudice

toward that group."  *Obrey v. Johnson*, 400 F.3d 691, 697 (9th Cir. 2005) (quoting *Lam v. Univ. of

Hawaii*, 164 F.3d 1186, 1188 (9th Cir.1999), *as amended on denial of reh'g* (Feb. 2, 1999)).

However, much of the declarations' contents are vague and conclusory.  *See, e.g.*, ECF No. 91,

Declaration of Angela Jovel ("Jovel Decl.") ¶ 8 ("When I bumped up in 2019, I experienced

horrible discrimination and retaliation on TI from Chief Payne."); ECF No. 89, Declaration of

---

[4] Plaintiff states that for some of these witnesses, there are additional references to them in documents not filed with the Court.  ECF No. 116 at 6 ("These excerpts and documents can all be made available for the Court's review, or in a subsequent motion, but are not being filed unless a motion is necessary.").  However, the Court has to rule on a summary judgment motion, including on evidentiary objections to a party's evidence, based on the record on file with the Court.

United States District Court
Northern District of California

1   Heather Grives ("Grives Decl.") ¶ 6 ("Over and over again, in my work for the Department, I have

2   seen that if someone speaks up, they get retaliated against."); Declaration of Anthony Chiacco

3   ("Chiacco Decl.") ¶ 5 ([O]n my experience working at SFFD, I have personally experienced, and

4   have personal knowledge, that there is a very bad culture permeating the SFFD that operates

5   against people that isn't a straight white male.").

6          Accordingly, the Court will consider the declarations of Colleen Kellison and Chris Blair,

7   but will not consider the declarations of Angela Jovel, Anthony Chiacco, Heather Grives,

8   Christine Bartel, Joseph Kellison, and Teresa Cavanaugh.

9                          **c.      Admissibility of Department of Labor Reports**

10         Defendant argues that reports prepared by the U.S. Department of Labor and submitted by

11  Plaintiff in opposition should not be considered by the Court because it is not clear that the reports

12  have been adopted by the DOL and they lack trustworthiness.  ECF No. 100 at 5-6.  Plaintiff

13  argues that the DOL reports are trustworthy.  ECF No. 116 at 11-16.

14         Under Rule 803(8) public records and reports are not excludable as hearsay where they

15  contain "factual findings from a legally authorized investigation" and "the opponent does not

16  show that the source of information or other circumstances indicate a lack of trustworthiness."  A

17  trial court has discretion to exclude an entire report or portions where the court deems it

18  untrustworthy.  *Beech Aircraft Corp. v. Rainey*, 488 U.S. 153, 167 (1988).  "The factors relevant

19  to the trial court's trustworthiness inquiry include '(1) the timeliness of the investigation; (2) the

20  investigator's skill or experience; (3) whether a hearing was held; and (4) possible bias when

21  reports are prepared with a view to possible litigation.'"  *LocusPoint Networks, LLC v. D.T.V.*

22  *LLC*, No. 14-CV-01278-JSC, 2015 WL 5043261, at *7 (N.D. Cal. Aug. 26, 2015) (quoting

23  *Sullivan v. Dollar Tree Stores, Inc.*, 623 F.3d 770, 778 (9th Cir. 2010)).  "A party opposing the

24  introduction of a public record bears the burden of coming forward with enough negative factors

25  to persuade a court that a report should not be admitted."  *Sullivan*, 623 F.3d at 778 (quoting

26  *Johnson v. City of Pleasanton*, 982 F.2d 350, 352 (9th Cir. 1992)).  The Court takes note of the

27  overwhelming similarities between the excluded DOL report described in *Sullivan* and the DOL

28  reports at-issue in this proceeding.  *See* Thigpen Decl. Exs. 1-3.  In *Sullivan*, the Ninth Circuit

United States District Court
Northern District of California

1   reviewed for abuse of discretion a district court's exclusion of a DOL report for lack of

2   trustworthiness and concluded that the court had not abused its discretion in excluding the report.

3   *See* 623 F.3d at 778.  While the Ninth Circuit was reviewing under an abuse of discretion

4   standard, this Court notes the overwhelming similarities between the report excluded in *Sullivan*

5   and the reports at-issue here and adopts the Ninth Circuit's reasoning.  Just as in *Sullivan*, the

6   reports are incomplete as the exhibits are unattached, the author is unknown, DOL did not provide

7   the report to either party, and it was only obtained through a request pursuant to the Freedom of

8   Information Act.  *Id.*  The Court takes into consideration Plaintiff's comparison to *Ruiz v.*

9   *Fernandez*, but finds it distinguishable as in *Ruiz* it appeared that the agency had adopted the

10  findings based on a letter from DOL to the defendant imposing a fine.  949 F. Supp. 2d 1055,

11  1062-63 (E.D. Wash. 2013), *order clarified,* No. CV-11-3088-RMP, 2013 WL 12167930 (E.D.

12  Wash. June 24, 2013).  In contrast, here, as in *Sullivan*, the DOL reports appears not to have been

13  final and the investigations were administratively closed.  Thigpen Decl. Exs. 2, 3.  Thus, the

14  Court sees fit not to consider the DOL reports based on lack of trustworthiness.

15          **2.      New Factual Allegations**

16          Defendant argues that "new claims" of harassment, such as an allegation that Payne stated

17  that Plaintiff must give "good head," were not alleged in the Complaint and thus cannot be

18  considered in the Motion for Summary Judgment.  *See* ECF No. 100 at 6-7.

19          "[S]ummary judgment is not a procedural second chance to flesh out inadequate

20  pleadings."  *Wasco Prods., Inc. v. Southwall Techs., Inc.*, 435 F.3d 989, 992 (9th Cir. 2006).

21  "Federal Rule of Civil Procedure 8(a)(2) requires that the allegations in the complaint give the

22  defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests."  *Pickern*

23  *v. Pier 1 Imports (U.S.), Inc.*, 457 F.3d 963, 968 (9th Cir. 2006) (quotation omitted) (finding on

24  motion for summary judgment that plaintiff's complaint did not sufficiently provide notice of the

25  grounds upon which it was based where plaintiff provided a list of hypothetical possible barriers a

26  disabled person might confront).  A complaint must contain "[t]he necessary factual averments . . .

27  with respect to each material element of the underlying legal theory."  *Wasco Prods.*, 435 F.3d at

28  992.  The Court finds that facts, such as that Payne told Gregg Perata that Plaintiff "must give

United States District Court
Northern District of California

good head" and that a coworker made comments about Plaintiff pumping, are not impermissibly outside the scope of the pleadings. The Court finds that Defendant had sufficient notice of claims such as these, and Plaintiff was not required to plead every factual detail underlying her claims. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007) (complaint does not need detailed factual allegations). The Complaint stated that Plaintiff alleged harassment based on "[o]stracism of female employees by their managers" and that Payne, in particular, had subjected Plaintiff to demeaning nicknames, commentary, and statements. ECF No. 1 ¶¶ 21, 195(a), 204(a); *see Leglu v. Cty. of Santa Clara*, No. 13-CV-01376-BLF, 2014 WL 4100599, at *7 (N.D. Cal. Aug. 20, 2014) (finding additional facts in opposition "fall within the specific allegations made by Plaintiff in the Complaint . . . .").

However, to the extent that Plaintiff seeks to broaden the scope of her harassment or discrimination claims to include conduct well before that alleged in her Complaint, the Court finds Plaintiff did not provide fair notice to Defendant of these allegations. While the Complaint put Defendant on notice of FMLA issues and failure to promote allegations for 2010 and 2013, the Complaint did not put Defendant on notice of harassment allegations dating back to 2013. To permit such claims to move forward would constitute a significant expansion of Defendant's potential liability. The Court may consider such conduct as background evidence. *See Raad v. Fairbanks N. Star Borough Sch. Dist.*, 323 F.3d 1185, 1192 (9th Cir. 2003), *opinion amended on denial of reh'g*, No. 00-35999, 2003 WL 21027351 (9th Cir. May 8, 2003) (although not independently actionable, "evidence about the District's refusal to hire Raad for a full-time teaching position in 1991 and 1992 is relevant and admissible insofar as it bears on her claim that she was discriminatorily refused a full-time position in August 1993.").

### 3. Analysis of the Merits

#### a. Statute of Limitations

Defendant argues that Plaintiff's claims related to incidents prior to 2017 are time-barred. ECF No. 64 at 13. Plaintiff argues that the "continuing violation doctrine" applies and allows such claims. ECF No. 94 at 14-15.

The statute of limitations for 42 U.S.C. § 1983 claims arising in California is two years.

1   *See Jackson v. Barnes*, 749 F.3d 755, 761 (9th Cir. 2014).  Plaintiff's FEHA claims are subject to

2   a three-year statute of limitations from April 18, 2021, when she filed her complaint with the

3   Department of Fair Housing and Employment.  Cal. Gov't. Code § 12960(e)(5) & (f)(1); SOF No.

4   193; Eliasoph Decl., Ex. I.  The statute of limitations for FMLA claims is two years, or three for

5   willfulness.  29 U.S.C. § 2617(c)(1)-(2).

6       Plaintiff invokes the continuing violation doctrine, seeming to suggest that it saves her

7   claims for pre-2017 conduct under each of these statutes.  ECF No. 94 at 21.  Plaintiff applies the

8   continuing violations doctrine as it is interpreted by California courts, which "allows liability for

9   unlawful employer conduct occurring outside the statute of limitations if it is sufficiently

10  connected to unlawful conduct within the limitations period."  *Richards v. CH2M Hill, Inc.*, 26

11  Cal. 4th 798, 802 (2001).  Under this rubric, a court "consider[s] whether 'the employer's actions

12  were (1) sufficiently similar in kind . . . ; (2) have occurred with reasonable frequency; (3) and

13  have not acquired a degree of permanence.'"  *Yanowitz v. L'Oreal USA, Inc.*, 36 Cal. 4th 1028,

14  1059 (2005) (quoting *id.* at 823).  While this lens is certainly correct for Plaintiff's FEHA claims,

15  it is not as clear that this interpretation of the continuing violations doctrine applies for Plaintiff's

16  FMLA and 42 U.S.C. § 1983 claims.  *See Leland v. City & Cty. of San Francisco*, 576 F. Supp.

17  2d 1079, 1093 (N.D. Cal. 2008) ("In the Ninth Circuit, the continuing violations doctrine applies

18  to claims pursuant to 42 U.S.C. section[] . . . 1983 in the same manner as the doctrine applies to

19  claims pursuant to Title VII.").  Under the federal court's interpretation, the continuing violations

20  doctrine does not apply to discrete acts, such as failure to promote, which would bar Plaintiff's

21  pre-2017 promotion and FMLA leave claims.[5]  *See Nat'l R.R. Passenger Corp. v. Morgan,* 536

22  U.S. 101, 105 (2002).

23      The Court finds that, insofar as Plaintiff's claims are founded on denial of promotion in

24

25  ───────────────

26  [5] Plaintiff does not cite any case law to support applying the continuing violations doctrine to
    FMLA claims, and at least some courts have determined it does not apply.  *See Smith v.*
27  *Westchester Cty.*, 769 F. Supp. 2d 448, 463-64 n.14 (S.D.N.Y. 2011) (collecting cases).
    Regardless, the Court determines Plaintiff's pre-2017 FMLA claims are barred even if the
28  continuing violations doctrine applies.

United States District Court
Northern District of California

2010 and FMLA issues from 2010 to 2014, these claims are barred even under California's interpretation of the continuing violations doctrine.  For one, the promotion and FMLA leave issues did not occur with reasonable frequency.  *See Moreno v. City of Porterville*, No. 121CV00865JLTBAM, 2022 WL 14128245, at *8 (E.D. Cal. Oct. 24, 2022) (4-year gap in incidents "far too attenuated to be considered reasonably frequent."); *Rayburn v. United Airlines Inc.*, No. SACV2100950CJCDFMX, 2021 WL 8893645, at *3 (C.D. Cal. July 2, 2021) (noting for a two-year gap, "[c]ourts have held that this length of time between incidents defeats allegations of a series of continuing violations.").  Further, where Plaintiff does not cite to evidence that there was any kind of ongoing dialogue regarding the pre-2017 incidents, these events had acquired a degree of permanence.  *Richards*, 26 Cal. 4th at 823 ("[P]ermanence" means "that an employer's statements and actions make clear to a reasonable employee that any further efforts at informal conciliation to . . . end harassment will be futile.").  Thus, Plaintiff's FMLA, 42 U.S.C. § 1983, and FEHA claims based on denial of promotion in 2010 and FMLA issues in 2010 and 2013-14 are barred.

Accordingly, the Court **GRANTS** Defendant's Motion for Summary Judgment to the extent that Plaintiff's claims seek a remedy for Plaintiff's 2010 denial of promotion and her FMLA issues from 2010 through 2014.

### b.     Labor Code § 1102.5 Claim

Plaintiff stipulates to dismissal of her cause of action under Labor Code § 1102.5.  ECF No. 94 at 2.  Thus, the Court **GRANTS** Defendant's Motion for Summary Judgment as to Plaintiff's claim pursuant to Labor Code § 1102.5.

### c.     42 U.S.C. § 1983 Claims

Plaintiff alleges five causes of action pursuant to 42 U.S.C. § 1983, claiming discrimination based on gender, pregnancy and lactation, gender discrimination producing disparate impact, retaliation based on gender discrimination, and retaliation based on pregnancy and lactation discrimination.  ECF No. 1 ¶¶ 95-143.  Defendant argues that all five causes of action fail because Plaintiff has not shown a discriminatory custom, or action ratified by a policymaker to establish municipal liability.  ECF No. 64 at 14-16.  Plaintiff argues that Defendant

United States District Court
Northern District of California

1   has a "systemic failure of its HR system" because it lacks policies, and a single person is vested

2   with too much power.  ECF No. 94 at 14-15.  Plaintiff also argues that Jesusa Bushong, who

3   manages human resources for the SFFD, and Fire Chief Jeanine Nicholson are policymakers and

4   Chief Nicholson also ratifies Bushong's decisions.  *Id.*

5         "[A] municipality cannot be held vicariously liable under section 1983 for the acts of its

6   employees. . . .  Under *Monell,* a municipality may be liable only if the alleged constitutional

7   violation was committed pursuant to an official policy, custom or practice."  *Leland*, 576 F. Supp.

8   2d at 1088-89 (citing *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658 (1978)).

9   "A § 1983 plaintiff can establish municipal liability in three ways: (1) the municipal employee

10  committed the constitutional violation pursuant to an official policy; (2) the employee acted

11  pursuant to a longstanding practice or custom; and (3) the employee functioned as a final

12  policymaker."  *Barone v. City of Springfield, Oregon*, 902 F.3d 1091, 1107 (9th Cir. 2018).

13        As to an official policy, Defendant points to the Civil Service Commission ("CSC") Rules,

14  which set policies for SFFD promotions as well as for discrimination complaints.  *See, e.g.*,

15  Eliasoph Decl. Ex. K, Sec. 303.3 (detailing policies for discrimination complaints).  Plaintiff does

16  not meaningfully address Defendant's evidence, nor point to a different official policy.  ECF No.

17  94 at 15-16.  She argues that SFFD refuses to adopt a maternity or lactation policy.  ECF No. 94 at

18  16.  However, Defendant provides copies of the City's Lactation in the Workplace Policy for 2018

19  and 2019, and in Plaintiff's own cited evidence Chief Nicholson states that SFFD follows the

20  City's policies and procedures for maternity leave.  *See* Bushong Decl. Exs. C, D; Nicholson Dep.

21  38:4-16.  Plaintiff also states that Bushong and Nicholson are final policymakers but does not

22  meaningfully explain the basis for this claim or in what way they exercised their power as

23  policymakers.  Again, Defendant's evidence shows that the CSC is tasked with the relevant

24  policymaking regarding discrimination claims.  *See* Eliasoph Decl. Ex. J, San Francisco Charter

25  Sec. 10.101 (CSC shall adopt rules, policies and procedures for discrimination).

26        Plaintiff also argues that SFFD has failed to provide lactation training and harassment

27  training.  ECF No. 94 at 3, 15.  "In limited circumstances, a local government's decision not to

28  train certain employees about their legal duty to avoid violating citizens' rights may rise to the

United States District Court
Northern District of California

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19

United States District Court
Northern District of California

level of an official government policy for purposes of § 1983." *Connick v. Thompson*, 563 U.S. 51, 61 (2011). However, municipality culpability "is at its most tenuous where a claim turns on failure to train." *Id.* To succeed, the municipality's failure to train employees in a relevant respect must amount to deliberate indifference. *Id.* "Deliberate indifference is a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action . . . . The city's 'policy of inaction' in light of [actual or constructive] notice that [a particular omission in] its program will cause constitutional violations is the functional equivalent of a decision by the city itself to violate the Constitution." *Id.* The Court finds that Plaintiff has not provided sufficient evidence of a pattern of similar conduct by untrained employees for a reasonable jury to find that SFFD's failure to train on lactation policies amounts to deliberate indifference. Assuming that the DOL put Defendant on notice of constitutional violations, such notice does not aid Plaintiff where her claims involve conduct prior to and corresponding with the DOL investigation. *See id.* at 63 n.7 ("[C]ontemporaneous or subsequent conduct cannot establish a pattern of violations that would provide notice to the cit[y] and the opportunity to conform to constitutional dictates . . . .") (quotation omitted). Further, Plaintiff concedes that SFFD has a harassment training. ECF No. 94 at 3. Plaintiff's evidence that on August 24, 2020 Bushong emailed her supervisor, Chief Jose Velo, that a significant number of officers had either not completed the training or not provided their certificates does not create a triable issue that Defendant has a practice of not providing harassment training. *See* Thigpen Decl. Ex 37.

20
21
22
23
24
25
26
27
28

Finally, Plaintiff puts forth a lengthy list of purported formal or informal policies or customs which she argues reflect insufficient disciplinary processes and discrimination investigations. SOF No. 5. However, the connection between these various "policies," such as that SFFD has its members investigate each other, and Plaintiff's constitutional claims is tenuous. Plaintiff fails to identify how the actions she alleges constitute gender discrimination and retaliation "implement[ed] or execut[ed] a policy statement, ordinance, regulation or decision." *Monell*, 436 U.S. at 690. "Only deprivations occurring pursuant to municipal custom or policy can give rise to municipal liability." *Schiff v. City & Cty. Of San Francisco*, 816 F. Supp. 2d 798, 812 (N.D. Cal. 2011), *aff'd,* 528 F. App'x 743 (9th Cir. 2013); *see also City of Canton, Ohio v.*

1   *Harris*, 489 U.S. 378, 389 n.9 (1989) ("Obviously, if one retreats far enough from a constitutional

2   violation some municipal 'policy' can be identified behind almost any . . . harm inflicted by a

3   municipal official; for example, [a police officer] would never have killed Tuttle if Oklahoma City

4   did not have a 'policy' of establishing a police force.  But *Monell* must be taken to require proof of

5   a city policy different in kind from this latter example before a claim can be sent to a jury on the

6   theory that a particular violation was 'caused' by the municipal 'policy.'") (quoting *City of*

7   *Oklahoma City v. Tuttle*, 471 U.S. 808, 823 (1985)).  Plaintiff fails to sufficiently connect the

8   constellation of potential customs or policies she identifies with her underlying constitutional

9   deprivations to move forward with her 42 U.S.C. § 1983 claims.

10      Accordingly, the Court **GRANTS** Defendant's Motion for Summary Judgment on

11  Plaintiff's claims pursuant to 42 U.S.C. § 1983.

12              **d.    FEHA Gender, Pregnancy and Lactation Harassment Claims**

13      Plaintiff brings separate causes of action pursuant to Cal. Gov't. Code § 12940(j), one

14  based on gender and one on pregnancy and lactation. ECF No. 1 ¶¶ 192-208.  Defendant argues

15  both of these claims fail because the various alleged conduct is unconnected to and not based on

16  gender.  ECF No. 64 at 18.  Although Plaintiff has brought these claims as two causes of action,

17  the Court will address them together as the factual allegations and bases of discrimination overlap.

18  *See* Cal. Gov't Code § 12926(r) ("Sex" includes pregnancy, breastfeeding, and gender);

19  *Valdovinos v. Cushman & Wakefield U.S., Inc.*, No. 21-CV-01924-JCS, 2022 WL 1471418, at *10

20  (N.D. Cal. May 10, 2022) (declining to disaggregate analysis of sex, national origin, and disability

21  harassment claims).

22      Under FEHA, "harassment creates a hostile, offensive, oppressive, or intimidating work

23  environment and deprives victims of their statutory right to work in a place free of discrimination

24  when the harassing conduct sufficiently offends, humiliates, distresses, or intrudes upon its victim,

25  so as to disrupt the victim's emotional tranquility in the workplace, affect the victim's ability to

26  perform the job as usual, or otherwise interfere with and undermine the victim's personal sense of

27  well-being."  Cal. Gov't Code § 12923(a) (effective January 1, 2019).  The elements of a hostile

28  work environment claim pursuant to FEHA are "(1) the plaintiff belongs to a protected group; (2)

United States District Court
Northern District of California

19

the plaintiff was subjected to unwelcome harassment because of being a member of that group; and (3) the harassment was sufficiently severe or pervasive to alter the conditions of employment and create an abusive working environment." *Landucci v. State Farm Ins. Co.*, 65 F. Supp. 3d 694, 703 (N.D. Cal. 2014). "With respect to the pervasiveness of harassment, courts have held an employee generally cannot recover for harassment that is occasional, isolated, sporadic, or trivial; rather, the employee must show a concerted pattern of harassment of a repeated, routine, or a generalized nature." *Lyle v. Warner Bros. Television Prods.*, 38 Cal. 4th 264, 283-84 (2006). "'[A] plaintiff who subjectively perceives the workplace as hostile or abusive will not prevail under the FEHA, if a reasonable person in the plaintiff's position, considering all the circumstances, would not share the same perception.'" *McCoy v. Pac. Mar. Ass'n.*, 216 Cal. App. 4th 283, 293 (2013) (quoting *id.* at 284).

Although a close call, the Court finds Plaintiff has established material facts to preclude summary judgment on her harassment claims. Plaintiff testified that her supervisor, Payne, and his supervisor, "constantly" called Plaintiff and her fellow female coworkers "minions," and asked them to do the office administrative work. S. Perata Dep. 83:7-13; ECF No. 113, Declaration of Sarah Perata ("S. Perata Decl.") ¶ 10;[6] *see Valdovinos*, 2022 WL 1471418, at *10 (denying summary judgment for harassment claim based, in part, on "constant (not isolated or sporadic) sexist comments."). Plaintiff testified that she felt she had to go to her male coworkers to get them to express her opinions because Payne would not listen if it was coming from Plaintiff. S. Perata Dep. 80:4-20. There is evidence that Payne treated her differently and more disparagingly than male coworkers when it came to discipline, such as when he threatened her with discipline for posting a photo with a recruit on Facebook, but then backtracked when Plaintiff's husband stated that he was the one who posted the photo. S. Perata Dep. 109:1-110:3, 111:12-112:15. Several times he told her she was an "emotional female," including when she came to him to complain that

---

[6] Defendant objects to paragraph 10 of Plaintiff's declaration on the basis that the facts were not included in the Complaint. ECF No. 114. As discussed above, the Court declines to take such a narrow view of the pleading requirements, but agrees that to the extent Plaintiff intends to expand the temporal scope of her pleadings to include conduct from 2016, that is beyond the scope of the Complaint. The Court may take this evidence into consideration as background.

coworkers were calling her lazy and ditzy.  S. Perata Dep. 80:20-81:15.  Payne often would imply to Plaintiff that her position was not permanent, and that she was "acting" and could be removed, which Plaintiff took to be an ongoing threat.  S. Perata Dep. 90:3-91:19.  Plaintiff indicated these comments about needing to be careful as an acting officer were only directed toward her, and she was the only female acting officer during her pregnancy.  S. Perata Dep. 91:23-92:3.

Plaintiff's coworker, Zachary Tibbits, "constantly" made comments during Plaintiff's pregnancy in 2019 that she was lazy and ditzy.  S. Perata Dep. 27:15-18, 29:18-30:13.  There was also a "blowup" between Tibbits and Plaintiff where he yelled at her, calling her difficult and emotional, and Plaintiff reported the incident because it had gotten "big," but there is no indication that anything was done.  S. Perata Dep. 30:14-23; *see Hope v. California Youth Auth.*, 134 Cal. App. 4th 577, 588-89 (2005) (holding that an employer is liable for nonsupervisory employee "only if the employer (a) knew or should have known of the harassing conduct and (b) failed to take immediate and appropriate corrective action.").  There is also evidence that Payne and Tibbits would put Plaintiff's desk figurines in sexual positions.  ECF No. 98-26, G. Perata Dep. 70:24-71:25; S. Perata Dep. 29:18-30:13; *see Atalla v. Rite Aid Corp.*, 89 Cal. App. 5th 294, 308 (2023) (harassment may refer to "visual harassment," including "derogatory posters, cartoons, or drawings on the basis of sex.").  Payne also regularly referred to another recruit as "Ghetto Barbie" in Plaintiff's presence.  S. Perata Decl. ¶ 10; *see Beyda v. City of Los Angeles*, 65 Cal. App. 4th 511, 520 (1998) (sexual harassment of others is relevant to harassment claim where Plaintiff has personal knowledge of it).

Defendant argues that many of the comments are not references to gender, but the Court finds there is sufficient evidence to infer gender bias.  For example, Plaintiff's husband testified that Payne said Plaintiff "must give great head because I don't know why you are with her."  G. Perata Dep. 68:16-69:3; *see Pantoja v. Anton*, 198 Cal. App. 4th 87, 114 (2011) (finding evidence tending to show party harbored gender bias admissible even if not heard by the plaintiff).

The Court finds that this conduct creates an issue of fact as to whether there was conduct pervasive enough to alter the conditions of Plaintiff's employment.  *See Lyle*, 38 Cal. 4th at 279-80 (2006) ("[T]he critical issue . . . is whether members of one sex are exposed to disadvantageous

terms or conditions of employment to which members of the other sex are not exposed.")
(quotation omitted).

Given the cumulative effect of the alleged harassment, and viewing the evidence most
favorably to Plaintiff, the Court **DENIES** Defendant's Motion for Summary Judgment as to
Plaintiff's twelfth and thirteenth claims for relief for hostile work environment gender, lactation,
and pregnancy harassment. *Cf. Davis v. Team Elec. Co.*, 520 F.3d 1080, 1096 (9th Cir. 2008) ("In
close cases such as this one, where the severity of frequent abuse is questionable, it is more
appropriate to leave the assessment to the fact-finder than for the court to decide the case on
summary judgment.").

### e. FEHA Retaliation Claim

Plaintiff alleges a cause of action for retaliation pursuant to California Government Code §
12940(h) based on opposing gender, pregnancy, and lactation discrimination. ECF No. 1 ¶¶ 220-
229. Defendant argues that Plaintiff's claim fails because she does not establish adverse action
beyond her release from her promotion, decisionmaker knowledge of protected activity, or pretext.
ECF No. 64 at 20-23.

"California courts apply the framework established by *McDonnell Douglas Corp. v.
Green,* 411 U.S. 792 (1973), to consider circumstantial evidence of discrimination in resolving
motions for summary judgment on claims under the FEHA." *McKinzy v. Nat'l R.R. Passenger
Corp.*, 836 F. Supp. 2d 1014, 1023 (N.D. Cal. 2011). First, to establish a prima facie case of
retaliation, Plaintiff must show (1) involvement in a protected activity, (2) an adverse employment
action, and (3) a causal link between the two. *See Brooks v. City of San Mateo*, 229 F.3d 917, 928
(9th Cir. 2000). "The burden in this stage is not onerous and the evidence necessary to satisfy it is
minimal." *Wills v. Superior Court*, 195 Cal. App. 4th 143, 159 (2011), *as modified on denial of
reh'g* (May 12, 2011) (quotations and citations omitted). Once Plaintiff presents her *prima facie*
case, the burden shifts to the employer to articulate "a legitimate, nondiscriminatory reason for the
challenged action." *Reeves v. Safeway Stores, Inc.*, 121 Cal. App. 4th 95, 112 (2004). "If the
employer discharges this burden, the presumption of discrimination disappears. The plaintiff must
then show that the employer's proffered nondiscriminatory reason was actually a pretext for

1    discrimination, and the plaintiff may offer any other evidence of discriminatory motive.  The

2    ultimate burden of persuasion on the issue of discrimination remains with the plaintiff."  *Harris v.*

3    *City of Santa Monica*, 56 Cal. 4th 203, 214-15 (2013).

#### i.    Plaintiff's Prima Facie Case

##### (i)    Protected Activity

6          Plaintiff argues the following are protected activities: 1) request for lactation facilities; 2)

7    participation in the DOL investigation into lactation facilities starting in April 2020; 3) Plaintiff's

8    email on June 16, 2020 stating she will be perusing union representation for possible EEO

9    violation and retaliation; 4) rejection of a settlement offer regarding her FMLA leave in August or

10   September 2020; and 5) request for an appropriate training schedule in June 2020.[7]  ECF No. 94 at

11   22-24.  Plaintiff also argues she engaged in protected activity when she complained to Payne

12   about discriminatory treatment related to her pregnancy, presumably referring to her October 3,

13   2019 email exchange and in-person conversation.  ECF No. 94 at 21; Payne Decl. Ex. A.  The

14   Court notes that the parties do not address whether Plaintiff's complaints regarding lactation

15   facilities and FMLA leave, while clearly invoking rights under the FLSA and FMLA, also invoke

16   rights under FEHA related to gender, pregnancy, or lactation discrimination.  The Court is unsure

17   the extent to which the substance of Plaintiff's complaints under FMLA and FLSA also implicate

18   her rights under FEHA.  However, in line with the parties' briefing and in the interest of

19   efficiency, the Court will address these activities as part of her FEHA claim.

20         Defendant contests only that Plaintiff's June 16, 2020 email constitutes protected activity.

21   ECF No. 64 at 21.  On June 16, 2020, Plaintiff emailed multiple coworkers, including Chief Tong,

22   Payne, and her new supervisor that she believed that she was being denied available training dates

23   based on her "marital and FMLA status" and that she "will be perusing union representation for

24   possible EEO violation and retaliation."  Thigpen Decl. Ex. 29; Payne Decl. Exhibit E.

25   Defendant argues that this email is nothing more than Plaintiff warning a coworker that she would

---

[7] Plaintiff also argues that her request for FMLA leave is a protected activity, but the Court understands this activity to pertain to Plaintiff's FMLA retaliation claim and thus addresses it in that section.

consider filing a claim if she did not get a preferred training schedule. ECF No. 64 at 21. The Court is not persuaded. "Threatening to file a discrimination complaint is a protected activity." *California Fair Emp. & Hous. Com. v. Gemini Aluminum Corp.*, 122 Cal. App. 4th 1004, 1019 (2004); *see Iwekaogwu v. City of Los Angeles*, 75 Cal. App. 4th 803, 815 (1999) (citing *Gifford v. Atchison, Topeka & Santa Fe Ry. Co.*, 685 F.2d 1149, 1156 n.3 (9th Cir. 1982)); *Silver v. KCA, Inc.*, 586 F.2d 138, 141 n.2 (9th Cir. 1978)). That Plaintiff did not definitively state she was filing a complaint, but rather would be "perusing union representation for possible EEO violation and retaliation," is not dispositive. She was informing her supervisor and superiors that she believed the conduct was unlawful based on a protected class pursuant to the FEHA. *See Husman v. Toyota Motor Credit Corp.*, 12 Cal. App. 5th 1168, 1193 (2017) ("The relevant question . . . is not whether a formal accusation of discrimination is made but whether the employee's communications to the employer sufficiently convey the employee's reasonable concerns that the employer has acted or is acting in an unlawful discriminatory manner.") (quotations omitted); *Yanowitz*, 36 Cal. 4th at 1047 n.7 ("Courts consistently have recognized that in enacting anti-retaliation provisions, legislators sought to protect a wide range of activity in addition to the filing of a formal complaint."); *see also George v. California Unemployment Ins. Appeals Bd.*, 179 Cal. App. 4th 1475, 1490 (2009) ("It has long been the law that whether an employee's formal or informal complaint is well founded is *immaterial* to a FEHA retaliation claim," but rather the focus is on good faith and reasonable belief) (emphasis in original). The Court finds Plaintiff's June 16, 2020 email may constitute protected activity.

### (ii)   Adverse Action

Defendant argues that Plaintiff has not established adverse action apart from her release from promotion because the other actions amount to petty grievances. ECF No. 64 at 19-20. Plaintiff argues that loss of her promotion probation, being forced to take unpaid leave, being forced to give up FMLA leave, disciplinary proceedings based on unsupported grounds, and being transferred to Station 49 constitute adverse employment actions. ECF No. 94 at 20-21. Plaintiff also possibly argues that failure to provide adequate training opportunities related to her summer 2020 training schedule constitutes an adverse action. *Id.* at 20. Additionally, Plaintiff argues that

retaliation-based hostile work environment can constitute an adverse action. *Id.* at 20-21.

"[A]dverse treatment that is reasonably likely to impair a reasonable employee's job performance or prospects for advancement or promotion" constitutes an adverse employment action. *Yanowitz*, 36 Cal. 4th at 1054-55. "[A]lthough an adverse employment action must materially affect the terms, conditions, or privileges of employment to be actionable, the determination of whether a particular action or course of conduct rises to the level of actionable conduct should take into account the unique circumstances of the affected employee as well as the workplace context of the claim." *Id.* at 1052. "[I]n determining whether an employee has been subjected to treatment that materially affects the terms and conditions of employment, it is appropriate to consider the totality of the circumstances." *Id.* at 1036. "[A] series of separate retaliatory acts collectively may constitute an 'adverse employment action' even if some or all of the component acts might not be individually actionable." *Id.* at 1058.

The Court notes that, while courts may consider retaliatory acts together to assess whether they constitute an adverse action, this case is not quite as susceptible to such a fluid analysis. *See Yanowitz*, 36 Cal. 4th at 1055. Whereas in *Yanowitz*, the plaintiff alleged a "pattern of systematic retaliation," the adverse actions herein involve different actors for different decisions, rendering it more difficult to consider them as a collective action. *Cf. McRae v. Dep't of Corr. & Rehab.*, 142 Cal. App. 4th 377, 390 (2006) ("[W]hat Dr. McRae contended was a continuous course of conduct was in fact a series of events, each bearing little relationship to the others, and at least some of which clearly were not the result of unlawful retaliation."). Thus, the Court elects to analyze most of the actions individually, and, where it deems appropriate, to consider them collectively.

### 1. FMLA Leave Issues

Plaintiff alleges that she was made to "give up FMLA leave." ECF No. 94 at 20. To the extent Plaintiff is referring to unpaid leave after the births of her first and second children, the Court finds these incidents outside the statute of limitations. To the extent Plaintiff is alleging that she had to come in on January 6, 2020 for training, the Court does not find this incident constitutes adverse action. ECF No. 94 at 20-21. Plaintiff testified that Payne advised she may be passed over for promotion if she did not attend trainings. S. Perata Dep. 136:14-137:5. However, the

1    Court does not determine that a jury could find Payne's statement to constitute a materially

2    adverse action, as there is no indication that his statements rose to the level of an ultimatum or

3    threat.  *Compare Martinez v. Costco Wholesale Corp.*, 481 F. Supp. 3d 1076, 1093 (S.D. Cal.

4    2020) (employer memo advising plaintiff that if she did not travel to a work event she would be

5    transferred or demoted constituted adverse employment action, although citing unpublished Ninth

6    Circuit cases finding threat of termination does not constitute adverse action).

### 2.    Transfer to Station 49

8        Plaintiff also argues that her transfer from Treasure Island to Station 49 was an adverse

9    action under the FEHA.  ECF No. 94 at 10-11.  The Court finds Plaintiff does not raise a triable

10   issue of fact as to this claim.  "[A] plaintiff who is made to undertake or who is denied a lateral

11   transfer—that is, one in which she suffers no diminution in pay or benefits—does not suffer an

12   actionable injury unless there are some other materially adverse consequences . . . such that a

13   reasonable trier of fact could conclude that the plaintiff has suffered objectively tangible harm.

14   Mere idiosyncrasies of personal preference are not sufficient to state an injury."  *McRae*, 142 Cal.

15   App. 4th at 393 (quoting *Brown v. Brody*, 199 F.3d 446, 457 (D.C. Cir. 1999), *overruled by*

16   *Chambers v. D.C.*, 35 F.4th 870 (D.C. Cir. 2022)).  Plaintiff has produced evidence that at

17   Treasure Island employees were not required to work holidays, weekends, or after 5:00 p.m.  G.

18   Perata Dep. 98:17-99:2.  She also stated that she and her husband were no longer able to drive

19   together and had vastly different schedules as a result of their transfers.[8]  S. Perata Decl. ¶ 13.[9]

20   Plaintiff's opposition also states that the commute was longer, although the Court did not find

21   evidence in the record to support this contention.[10]  The Court does not find that these

---

[8] Plaintiff also stated that, because of inadequate lactation facilities, her milk supply dwindled and she had to purchase formula instead.  S. Perata Decl. ¶ 13.  However, one of Plaintiff's Additional Material Facts is that there were no lactation facilities at Treasure Island as of 2021.  AMF No. 42. Thus, while the lack of facilities is certainly relevant to other claims made by Plaintiff, the Court does not find it relevant to whether this location transfer was an adverse action.

[9] Defendant objects to paragraph 13 of Plaintiff's declaration on the basis that it is argumentative, conclusory, and lacks foundation.  ECF No. 114 at 4.  While the Court agrees that some portions are conclusory, such as that it was an extreme burden and caused hardship for Plaintiff's family to be moved, the Court finds that the statement that Plaintiff and her husband were no longer able to drive together and struggled with vastly different schedules to be sufficiently detailed.

[10] The evidence Plaintiff cites in support amounts to Gregg Perata answering a question about the increased expenses he experienced as a result of his transfer from the Training Department to a

circumstances present an issue of fact for a jury to conclude the transfer was an adverse action.
*See Malais v. Los Angeles City Fire Dep't*, 150 Cal. App. 4th 350, 358 (2007) (finding the fact
that plaintiff "preferred the work, schedule, and camaraderie" of one work assignment to another
did not constitute adverse action where plaintiff had the same promotional opportunities and
overtime).  While factors such as the convenience of driving together and a work schedule more
accommodating to plaintiff's schedule may be considered, courts have indicated these issues on
their own are insufficient.  *See Guyton v. Novo Nordisk, Inc.*, 151 F. Supp. 3d 1057, 1074 (C.D.
Cal. 2015) (finding the fact that the new position would have shortened plaintiff's commute to
deal with ailing father supported that denial of transfer was adverse action, but it was "likely not
sufficient on its own to make denial of the transfer an adverse employment action."), *judgment
entered,* No. CV1500009MMMAGRX, 2015 WL 9093153 (C.D. Cal. Dec. 16, 2015), *aff'd sub
nom. Guyton v. Novo Nordisk A/S*, 696 F. App'x 246 (9th Cir. 2017); *Patten v. Grant Joint Union
High Sch. Dist.*, 134 Cal. App. 4th 1378, 1390 (2005) (considering "additional, smaller problems,"
such as conflict with plaintiff's family schedule in determining transfer was adverse action, but
noting many of those problems on their own do not constitute "material adverse action."),
*disapproved of on other grounds by Lawson v. PPG Architectural Finishes, Inc.*, 12 Cal. 5th 703
(2022).  Where courts have considered transfers to be material the alleged harm is connected to the
employee's job performance or advancement.  *See Horsford v. Bd. of Trustees of California State
Univ.*, 132 Cal. App. 4th 359, 374 (2005) (finding employee's transfer to department in which he
had no experience or training and reasonably would be expected to fail could constitute adversely
changed the condition of employment); *Patten*, 134 Cal. App. 4th at 1389 (school principal's
transfer amounted to demotion based on factors such as lack of administrative support, budget
issues, and less prestigious school); *Abboub v. international Bus. Machines Corp.*, No. C 04-
00017 JW, 2006 WL 905319, at *6 (N.D. Cal. Apr. 7, 2006) (finding transfer could constitute
adverse action where a jury could find that his responsibilities were materially different from, and
not at a level comparable to, his prior position).  Plaintiff does not point to evidence that, for

location different from Plaintiff.  He does not address his commute, nor Plaintiff's.  *See* AMF 217;
G. Perata Dep. 186:7-16.

example, her duties shifted, or the environment was less conducive to advancement. Thus, the Court declines to consider Plaintiff's transfer an adverse action based on the differing schedule.

### 3.     Unpaid Leave

Examining Plaintiff's claim that she was forced to take unpaid leave, insofar as she is referring to issues with her FMLA leave between 2010 and 2014, the Court finds these issues time-barred. Plaintiff's Opposition also states that she went on unpaid leave around December 2020 after not being able to withstand her working conditions. ECF No. 94 at 13. If Plaintiff is arguing this unpaid leave constitutes an adverse action, the Court disagrees. Plaintiff points to no caselaw indicating that an employee's decision to go on leave constitutes an adverse action by an employer and does not point the Court to evidence for a reasonable jury to find Plaintiff was forced to take leave akin to a constructive discharge. *Cf. Doe v. Dep't of Corr. & Rehab.*, 43 Cal. App. 5th 721, 735 (2019) ("This argument fails for the simple reason that the leave was Doe's action, not CDCR's. Doe requested and obtained permission to take two medical leaves. Nothing in the record suggests CDCR forced him to do so, or refused to pay him during his leaves.") (medical leave context); *Holmes v. Petrovich Dev. Co., LLC*, 191 Cal. App. 4th 1047, 1062 (2011) ("The conditions prompting resignation must be 'sufficiently extraordinary and egregious to overcome the normal motivation of a competent, diligent, and reasonable employee to remain on the job.'") (quoting *Turner v. Anheuser-Busch, Inc.*, 7 Cal. 4th 1238, 1246 (1994)).

### 4.     Training Schedule

Plaintiff also argues that she was not provided opportunities to get training when her colleague Zachary Tibbits provided a schedule comprised of weekends and holidays. *See* S. Perata Depo 176:1-13. While the trainings were in connection to her promotion and thus might be material to her employment if she was denied the opportunity, Plaintiff states that she completed the training requirements. SOF No. 71; S. Perata Decl. ¶ 16;[11] *see Williams v. Lorenz*, No. 15-CV-04494-BLF, 2018 WL 4003455, at *14 (N.D. Cal. Aug. 22, 2018) ("For a failure to train or an exclusion from meetings to constitute an adverse action, the employee must show that the denial

---

[11] Defendant did not object to this statement in its reply to Plaintiff's declaration. *See* ECF No. 114.

1   or exclusion materially impacted his or her employment condition."). While it may have been

2   frustrating to receive the schedule and go back and forth about dates, the Court does not find these

3   issues to have materially impacted the terms, conditions, or privileges of employment.

### 5.       Disciplinary Investigations and Loss of Promotion

5           The Court concludes that the disciplinary investigations, considered collectively with the

6   release from promotion, constitute adverse action. Chief Nicholson stated that the investigations

7   contributed to her loss of faith in Plaintiff and decision to revoke the promotion. *See* Nicholson

8   Dep. 130:2-130:22. Regardless of whether Plaintiff was ultimately suspended, it is hard to argue

9   that the investigations did not impair Plaintiff's prospects for advancement or promotion. *See*

10  *Ferretti v. Pfizer Inc.*, No. 11-CV-04486, 2013 WL 140088, at *12 (N.D. Cal. Jan. 10, 2013)

11  (performance review could be adverse action where it partially led to plaintiff's termination).

12  Whether the investigations, without Plaintiff's demotion, would constitute adverse action, the

13  Court need not decide. They are certainly related to Defendant's ultimate decision to release

14  Plaintiff from promotion.

### 6.       Retaliation-Based Harassment

16          Finally, Plaintiff argues that a retaliation-based hostile work environment constitutes an

17  adverse employment action. ECF No. 94 at 20-21. "'[W]orkplace harassment, if sufficiently

18  severe or pervasive, may in and of itself constitute an adverse employment action sufficient to

19  satisfy the second prong of the prima facie case for . . . retaliation cases.'" *Kelley v. The Conco*

20  *Companies*, 196 Cal. App. 4th 191, 212 (2011) (quoting *Yanowitz*, 36 Cal. 4th at 1056 n.16).

21  "[A]n employer may be held liable for coworkers' retaliatory conduct if the employer knew or

22  should have known of the coworkers' retaliatory conduct and either participated and encouraged

23  the conduct, or failed to take reasonable actions to end the retaliatory conduct." *Id.* at 213. The

24  bulk of the allegations related to this claim, specifically Gregg Perata's testimony that other

25  coworkers told him that Clint Bailey said he was going to "take them out," or told him that another

26  colleague said they knew someone on the board of his children's school who was going to get

27  their children's scholarships removed, constitute inadmissible hearsay. G. Perata Dep. 163:21-

28  164:14; 165:11-166:18; *see* Fed. R. Evid. 801, 802; *Noviello v. City of Boston*, 398 F.3d 76, 85

1   (1st Cir. 2005) ("[S]tatement from an unnamed coworker that other employees told him to 'stay

2   away' from the plaintiff as she was 'trouble'" was hearsay as "its probative value ultimately

3   depends on the truth of the declarant's own unsworn out-of-court utterance."); *Flanagan v. Off. of*

4   *Chief Judge of Cir. Ct. of Cook Cty., Illinois*, 893 F.3d 372, 375 (7th Cir. 2018) ("Flanagan's

5   testimony about what her colleague Anderson told her, and Anderson's written account of events,

6   were properly ignored because they suffer from a *double* hearsay problem: they are statements of

7   what Anderson said Vaughan and Loizon had said.").  Separate from the harassing conduct limited

8   by hearsay issues, the other conduct Plaintiff possibly argues constitutes retaliatory harassment

9   includes assigning Plaintiff a training schedule on weekends and holidays and not permitting her

10  to trade her schedule.  However, even assuming the relevant actors were aware of Plaintiff's

11  protected activity at the time of those events, they are not on their own severe or pervasive enough

12  to constitute harassment.

13       In sum, the Court finds that the disciplinary investigations into Plaintiff's conduct and the

14  release from promotion constitute adverse action.

15                          **(iii)    Causation**

16       Defendant argues that Plaintiff cannot make a *prima facie* claim of retaliation under FEHA

17  because the key people responsible for opening the investigations and selecting investigators were

18  not aware of Plaintiff's FMLA, FLSA, or EEO complaints.  ECF No. 64 at 20-21.  Specifically,

19  Defendant argues that the three investigators, Covitz, D'Arcy, and Kasper, and Plaintiff's former

20  supervisor, Payne, were unaware of Plaintiff's protected activities while investigating.  *Id.* at 21.

21  Plaintiff argues that Payne was aware of her June 16, 2020 email, and that Chief Jose Velo and

22  Chief Nicholson were aware of her DOL complaints.  ECF No. 94 at 21-22.

23       "To establish a prima facie case of retaliation, [Plaintiff is] required to show that the

24  adverse employment actions were linked to [her] protected activity."  *Flores v. City of*

25  *Westminster*, 873 F.3d 739, 749 (9th Cir. 2017).  "This causal link 'may be established by an

26  inference derived from circumstantial evidence.'"  *Id.* (quoting *McRae*, 142 Cal. App. 4th at 388).

27  Plaintiff "could satisfy [her] initial burden 'by producing evidence of nothing more than the

28  [City]'s knowledge that [she] engaged in protected activities and the proximity in time between

United States District Court
Northern District of California

the protected action and the allegedly retaliatory employment decision.'" *Id.* (quoting *McRae*, 142 Cal. App. 4th at 388). "With respect to the Defendant's knowledge, for the purposes of causation, it is sufficient that at least one of the persons responsible for making each adverse employment decision had knowledge that Plaintiff had engaged in protected activity." *Ferretti*, 2013 WL 140088, at *10.

Here, there is evidence that various players had knowledge of Plaintiff's claims at the time of the disciplinary investigations and release from promotion. Christopher Bonn, the Director of Investigations, was aware as of July 6, 2020 of Plaintiff's June 16, 2020 email, as Payne forwarded him the conversation. *See* AMF 69; Thigpen Decl. Ex. 31. Bonn also advised at least one person that he was aware that Plaintiff had a potential EEO claim against Covitz. *See* Thigpen Decl. Ex. 77 (October 27, 2020 email).[12] Bonn appears to have been involved in the initial investigation into the June 24, 2020 text message incident and was part of the determination to shift the investigation from who used Plaintiff's phone to send the text messages to whether Plaintiff sent the text messages and was untruthful in her reporting of the event. *See* ECF No. 72, Declaration of Christopher Bonn, ("Bonn. Decl.") ¶ 3 ("Initially, we were considering opening an investigation to see who might have sent the text messages. . . . [W]e determined that the focus of the investigation should be whether Plaintiff sent the text messages and was candid in her unusual occurrence report."). Further, there is evidence that Bonn was involved in the determination whether to release Plaintiff from promotion. *See* Nicholson Depo 132:23-133:14 (testifying that she did not believe Plaintiff was falsely accused based, in part, on conversations with her staff and that she would have spoken to Victor Wyrsch or Brian Rubenstein, and Christopher Bonn or Zachary Tibbitts prior to denying Plaintiff's promotion in 2020).[13] There is also evidence that

---

[12] Defendant argues that this statement is hearsay because it is another employee relaying what Bonn said, does not make clear when Bonn became aware of the potential EEO claim, and only discusses a potential claim. AMF No. 78. As discussed elsewhere, a threat to make an EEO claim is still protected activity. Additionally, the Court does not consider Bonn's statement to be inadmissible hearsay. *See* Fed. R. Evid. 801(d)(2)(D) (statement not hearsay "if offered against a party and is . . . a statement by the party's agent or servant concerning a matter within the scope of the agency or employment, made during the existence of the relationship.").

[13] There is evidence that Zachary Tibbitts replaced Christopher Bonn in his role at some point after 2020. *See* Nicholson Dep. 49:20-50:17; Bonn Decl. ¶ 2; Tibbitts Decl. ¶ 2.

Brian Rubenstein was aware of Plaintiff's possible EEO violation claim against Covitz, at least as of October 27, 2020. *See* ECF No. 108-3, Thigpen Decl. Ex. 77.

Chief Nicholson, who makes the ultimate decision on initiating investigations, possibly was aware of the DOL lactation complaint around May 2020. ECF No. 98-30, Bushong Dep. 19:9-20:1, 21:5-9, 123:9-22, 145:6-12. Further, it appears she was aware of Plaintiff's FMLA complaint around August or September 2020. ECF No. 67, Bushong Dep. 122:24-123:4; Bushong Decl. ¶ 6.

By September 1, 2020, Chief Velo was aware of the DOL investigation into Plaintiff's FMLA issues and that Plaintiff had declined the settlement offer, responding, "Can they do that? If so, do they have to sign waivers??" Thigpen Decl. Ex. 88. Bushong also believes she would have told him before September 1, 2020, perhaps in relation to reposting or posting the lactation policy. Bushong Dep. 113:6-12; 151:6-15; 152:9-15. Chief Velo was appointed as Plaintiff's hearing officer for the training binders investigation. Thigpen Decl. Ex. 74.

In sum, Plaintiff has made a showing that various personnel involved in deciding whether to initiate the investigations and whether to release Plaintiff from her promotion were aware of her DOL complaints based on lactation and FMLA leave, as well as her June 16, 2020 complaint related to the training schedule and violation based on FMLA and marital status. The Court considers this evidence sufficient to make a *prima facie* showing of causation. *See Reeves*, 121 Cal. App. 4th at 108 ("[A] majority of workers are employed by large economic enterprises with layered and compartmentalized management structures. In such enterprises, decisions significantly affecting personnel are rarely if ever the responsibility of a single actor. As a result, unexamined assertions about the knowledge, ignorance, or motives of 'the employer' may be fraught with ambiguities, untested assumptions, and begged questions.").

### ii.    Legitimate Reasons

After Plaintiff makes her *prima facie* showing, the burden shifts to Defendant to provide a legitimate, nondiscriminatory reason for the action. "In evaluating a legitimate nondiscriminatory reason, 'the ultimate issue is simply whether the employer acted with *a motive to discriminate illegally*. Thus, 'legitimate' reasons in this context are reasons that are *facially unrelated to*

*prohibited bias*, and which, if true, would thus preclude a finding *of discrimination*.'" *Lawler v. Montblanc N. Am., LLC*, 704 F.3d 1235, 1243 (9th Cir. 2013) (quoting *Guz v. Bechtel Nat. Inc.*, 24 Cal. 4th 317, 352 (2000) (emphases in original) (citation omitted)).

Defendant offers the following rationales for its decisions: 1) SFFD initiated an investigation into the text messages in accordance with SFFD policy after multiple supervisors and coworkers received offensive messages; 2) SFFD initiated a second investigation into whether Plaintiff wrongly took binders from the Department of Training after learning about this incident during the course of the text message investigation; and 3) SFFD released Plaintiff from her promotion given the investigative findings because supervisory officers must be trusted to act with integrity. ECF No. 64 at 22-23. The Court finds these rationales supported by evidence in the record. Chief Tong states that she asked Plaintiff to report the text message incident after multiple SFFD employees received inappropriate texts that appeared to be from Plaintiff's phone. ECF No. 78, Declaration of Sandy Tong ("Tong Decl.") ¶ 11. Retired Deputy Chief Victor Wyrsch states he was required to open an investigation based on the report because it indicated possible SFFD rule violations. ECF No. 80, Declaration of Victor Wyrsch, ("Wyrsch Decl.") ¶ 2. Covitz, the initial investigator, states that he learned that Plaintiff might have taken binders from Treasure Island and wrote a memorandum on the issue. Covitz Decl. ¶ 4. Chief Velo appears to have recommended an investigation based on Covitz's report. Covitz Decl. Ex. A. Finally, Chief Nicholson states that she released Plaintiff after she lost faith in Plaintiff's trustworthiness based on allegedly stealing materials and sending inappropriate text messages, as well as her behavior around those incidents and not taking responsibility. *See* Nicholson Dep. 131:10-132-14. The Court finds these reasons facially unrelated to prohibited bias and would preclude a finding of discrimination, if true.

### iii.    Pretext and Retaliatory Animus

As Defendant has met its burden, the presumption of retaliation disappears. *See Guz*, 24 Cal. 4th at 356. Once the employer has provided a legitimate, nondiscriminatory reason for its action, the burden shifts to the employee to "to show there was nonetheless a triable issue that decisions leading to [adverse action] were actually made on the prohibited basis . . . ." *Id.* at 360.

1
2
3
4
5
6
7

Plaintiff "must offer evidence sufficient to allow a trier of fact to find either the Department's stated reasons were pretextual or the circumstances 'as a whole support[ ] a reasoned inference that the challenged action was the product of discriminatory or retaliatory animus.'" *Light v. Dep't of Parks & Recreation*, 14 Cal. App. 5th 75, 94 (2017) (quoting *Joaquin v. City of Los Angeles*, 202 Cal. App. 4th 1207, 1226 (2012)). "A plaintiff must offer specific and substantial circumstantial evidence to prove pretext in a retaliation claim under FEHA." *Lawler*, 704 F.3d at 1244 (quotation omitted).

8
9
10
11
12
13
14
15

Plaintiff argues that the reasons for releasing her from her promotion probation are invalid and thus pretextual. ECF No. 94 at 23. However, the Court finds that Plaintiff has not raised a triable issue of fact that the investigations, and in turn Plaintiff's release, were false or invalid to support pretext. "The inquiry is not whether [Defendant's] actions were 'wrong, mistaken, or unwise,' but rather whether a rational fact finder could reasonably reject [Defendant's] explanations as false or pretextual." *Tomada v. Home Depot U.S.A., Inc.*, No. 13-CV-1647 YGR, 2014 WL 2538792, at *12 (N.D. Cal. June 3, 2014) (quoting *Morgan v. Regents of Univ. of Cal.*, 88 Cal. App. 4th 52, 75 (2000)).

16
17
18
19
20
21
22
23
24
25
26

Plaintiff argues that the initial investigator into the text messages, Jeffrey Covitz, was biased against her. ECF No. 94 at 22. It is uncontested, however, that Defendant removed Covitz as the investigator related to Plaintiff's concern.[14] SOF No. 157. The new investigator, Patrick D'Arcy, states that he re-interviewed individuals interviewed by Covitz, and did not rely on any of Covitz's notes. D'Arcy Decl. ¶ 4. D'Arcy states that he interviewed twelve witnesses, reviewed documents, video, still images, and screenshots of Plaintiff's text messages. *Id.* ¶ 5. Plaintiff does not dispute that D'Arcy and Marc Kasper, the investigator for the training binders incident, were unaware of Plaintiff's DOL or EEO claims and had no prior negative interactions with Plaintiff. *See* SOF No. 160; 161; *Tomada*, 2014 WL 2538792, at *12-13 (analyzing whether a disciplinary investigation was pretextual and considering relevant that neither of the investigators knew of plaintiff's age, race or national origin during the investigation); *compare Nazir v. United Airlines,*

27

---

28

[14] Plaintiff does state that DOL had to get involved in order for Defendant to remove Covitz. SOF No. 157.

*United States District Court Northern District of California*

1   *Inc.*, 178 Cal. App. 4th 243, 277 (2009) (finding investigation led by supervisor accused of bias

2   supported pretext).  Plaintiff states that D'Arcy was Gregg Perata's supervisor, but does not

3   explain why that would render him biased against Plaintiff.  *See* SOF No. 161.  Plaintiff also

4   argues that D'Arcy's report replicates language from Covitz's, but a review of the two documents,

5   even drawing all inferences in favor of Plaintiff, suggests very little overlap, and certainly not

6   enough to create a material question of fact as to D'Arcy's reliance where he states there was

7   none.  *Compare* Thigpen's Decl. Ex. 82 (Covitz report), *with* D'Arcy Decl. Ex. A (D'Arcy report).

8   Plaintiff argues D'Arcy used the same questions as Covitz but does not cite to supporting

9   evidence.  *See* SOF No. 170.  Under such circumstances, a reasonable jury could not find that

10  Covitz's involvement in the investigation renders it pretextual.  *Compare Reeves*, 121 Cal. App.

11  4th at 119-20 ("[E]vidence support[ed] an inference that [investigator's] investigation of the

12  alleged misconduct was not truly independent, but was heavily skewed to favor the ostensibly

13  tentative conclusions of the reporting supervisor" where investigator, among other things, used

14  terms like "victim," "suspect," and "solid case.").

15        Plaintiff also argues that Payne had animus toward Plaintiff based on protected

16  characteristics, such as gender and FMLA status.  ECF No. 94 at 7-8.  Accepting as true, Plaintiff

17  has not produced evidence that Payne was involved in the investigations or Plaintiff's promotion

18  release such that a reasonable jury could find him to be a but-for cause of the investigations, their

19  results, and Plaintiffs release from promotion.  *See Reeves*, 121 Cal. App. 4th at 108 ("[T]he

20  plaintiff can establish the element of causation by showing that *any* of the persons involved in

21  bringing about the adverse action held the requisite animus, provided that such person's animus

22  operated as a 'but-for' cause, i.e., a force without which the adverse action would not have

23  happened.") (emphasis in original).  Plaintiff argues that Payne falsely accused her of taking the

24  binders, which is what prompted the second disciplinary investigation.  *See* SOF No. 152.

25  However, Covitz also mentions in his report that their colleague, Jennifer Treff, stated Plaintiff

26  took the binders.  Covitz Decl. Ex. A.[15]  Plaintiff argues that Payne lied to investigators about

27

28  _____
    [15]  Plaintiff objects to Jennifer Treff's Declaration stating she personally saw Plaintiff take the
    training binders, based on lack of personal knowledge.  SOF No. 153.  The Court finds that there

whether she responded to his email in February 2020 about the missing binders.  *See* SOF No.

178.  However, investigator Kasper's report is explicit in reaching no conclusion about whether

Plaintiff had been insubordinate in that regard because of a lack of clarity concerning whether she

had spoken with Payne in person or on the phone.  Kasper Decl. Ex. A; *compare Staub v. Proctor

Hosp.*, 562 U.S. 411, 421 (2011) (finding, in the context of another discrimination statute, "the

supervisor's biased report may remain a causal factor if the independent investigation takes it into

account without determining that the adverse action was, apart from the supervisor's

recommendation, entirely justified.").  Plaintiff does not otherwise provide evidence that Payne

was significantly involved in the investigations or release.  *Compare DeJung v. Superior Ct.*, 169

Cal. App. 4th 533, 551 (2008) ("[S]howing that a significant participant in an employment

decision exhibited discriminatory animus is enough to raise an inference that the employment

decision itself was discriminatory, even absent evidence that others in the process harbored such

animus.").

Beyond the issues with the investigations, Plaintiff makes multiple arguments to support

discriminatory motive.  First, the Court agrees with Plaintiff that she has made a showing that the

adverse actions were temporally proximate to her protected activities.  *See Santillan v. USA Waste

of California, Inc.*, 853 F.3d 1035, 1047 (9th Cir. 2017) (plaintiff "established a nexus between his

termination in July 2012, and his protected activity because USA Waste fired him roughly two

months after" the activity).  The Court also agrees with Plaintiff that temporal proximity alone is

insufficient for Plaintiff to carry her burden at this third stage.  *See Loggins v. Kaiser Permanente

Internat.*, 151 Cal. App. 4th 1102, 1112 (2007) ("[T]emporal proximity, although sufficient to

shift the burden to the employer to articulate a nondiscriminatory reason for the adverse

employment action, does not, without more, suffice also to satisfy the secondary burden borne by

the employee to show a triable issue of fact on whether the employer's articulated reason was

untrue and pretextual.").

---

is sufficient personal knowledge for Treff's statement, and, further, that this objection misses the
operative question which is not relitigating whether Plaintiff actually took the binders, but, rather,
whether there is evidence suggesting the investigation was pretextual or retaliatory.

1       Plaintiff also argues that she was the only employee not appointed to her permanent

2   position with an investigation pending and thus was treated differently than those similarly

3   situated.  ECF No. 94 at 24.  However, Plaintiff fails to produce evidence showing that there were,

4   in fact, others similarly situated.  "[I]ndividuals are similarly situated when they have similar jobs

5   and display similar conduct." *Vasquez v. Cty. of Los Angeles,* 349 F.3d 634, 641 (9th Cir. 2003),

6   *as amended* (Jan. 2, 2004).  Employees must be similar in material respects, which depends on

7   context.  *See Earl v. Nielsen Media Research, Inc.*, 658 F.3d 1108, 1114 (9th Cir. 2011).

8   Plaintiff's Opposition states that there are "at least three others" with an investigation pending, but

9   provides no citation to the record and the Court did not locate a comparable statement in Plaintiff's

10  Additional Statement of Material Facts.  ECF No. 94 at 24.  Plaintiff's Opposition also states that

11  multiple male colleagues have been promoted while facing and serving discipline, but, again,

12  provides no citation for the Court.  *Id.* at 13.  Plaintiff states in her declaration that she knows of

13  several people who had disciplinary proceedings, were found guilty, and still received their

14  promotions.  S. Perata Decl. ¶ 16.  This statement, however, is vague and does not provide the

15  Court with sufficient context to determine whether a reasonable jury could find the persons

16  identified were materially similar to Plaintiff.  *See Meaux v. Nw. Airlines, Inc.*, 718 F. Supp. 2d

17  1081, 1091 (N.D. Cal. 2010) (finding employees not similarly situated where misconduct was

18  distinguishable, and plaintiff had failed to accept responsibility whereas other employee had),

19  *aff'd,* 490 F. App'x 58 (9th Cir. 2012).

20      Plaintiff also argues that pretext or discriminatory motive is supported by Plaintiff's lack of

21  prior discipline and good performance reviews.  ECF No. 94 at 23.  The Court does take note that

22  Plaintiff had received good performance reviews and had no disciplinary record prior to the

23  discipline investigations relevant to this case.  *See* Thigpen Decl., Ex. 11; ECF No. 67, Nicholson

24  Dep. 131:10-13.  On whole, the Court finds that the temporal proximity of the adverse actions and

25  Plaintiff's performance prior to the disciplinary investigations does not provide sufficient

26  circumstantial evidence of pretext or retaliatory animus for a jury to conclude Defendant's actions

27  were retaliatory under FEHA.

28      Accordingly, the Court **GRANTS** Defendant's Motion for Summary Judgment on

United States District Court
Northern District of California

1    Plaintiff's claim of retaliation pursuant to FEHA.

2                    **f.      FEHA Gender and Pregnancy Discrimination Claims**

3            Plaintiff brings two causes of action based on discrimination under FEHA, one for gender

4    discrimination and another for pregnancy and lactation discrimination.  *See* ECF No. 1 ¶¶ 171-91.

5    Because of the overlapping nature of the claims, which both constitute sex discrimination under

6    FEHA, and because Plaintiff does not particularly differentiate, the Court sees fit to analyze the

7    claims together.  Defendant seeks summary judgment on the same bases as for the retaliation

8    claims.

9            Similar to FEHA retaliation claims, the *McDonnell Douglas* burden-shifting framework

10   applies to sex discrimination claims.  *See Muniz v. United Parcel Serv., Inc.*, 731 F. Supp. 2d 961,

11   971 (N.D. Cal. 2010).  To meet her prima facie burden, Plaintiff must show "(1) [s]he was a

12   member of a protected class, (2) [s]he was qualified for the position [s]he sought or was

13   performing competently in the position [s]he held, (3) [s]he suffered an adverse employment

14   action, such as termination, demotion, or denial of an available job, and (4) some other

15   circumstance suggests discriminatory motive."  *Guz*, 24 Cal. 4th at 355.  Plaintiff argues the same

16   adverse actions regarding her sex discrimination claims as her retaliation claim.  Defendant does

17   not offer different legitimate reasons in return.  The Court thus turns to whether a reasonable jury

18   could find pretext or discriminatory motive related to gender, pregnancy, or lactation.

19                                   **(i)      Pretext**

20           The Court finds that Plaintiff's sex discrimination claims fail for much the same reasons

21   that Plaintiff's FEHA retaliation claim fails, specifically there is a lack of triable fact as to whether

22   the investigations were pretextual and a lack of evidence of discriminatory motive.  Plaintiff does

23   not cite to evidence supporting that sex discrimination was the cause of the adverse actions.  *See*

24   *Johnson v. United Cerebral Palsy/Spastic Children's Found. of Los Angeles & Ventura Ctys.*, 173

25   Cal. App. 4th 740, 758 (2009) ("[T]here must be evidence supporting a rational inference that

26   intentional discrimination, on grounds prohibited by the statute, was the true cause of the

27   employer's actions.") (citation and quotation omitted).  As discussed above, while Plaintiff argues

28   gender bias on the part of Payne and Covitz, she has not shown that they were substantially

1    involved in these adverse actions to create an inference of discriminatory motive or that the

2    investigations were false.  *See DeJung*, 169 Cal. App. 4th at 551 ("[S]howing that a significant

3    participant in an employment decision exhibited discriminatory animus is enough to raise an

4    inference that the employment decision itself was discriminatory, even absent evidence that others

5    in the process harbored such animus.").

6         Accordingly, as Plaintiff has not met her burden regarding *McDonnell Douglas*'s third

7    prong, the Court **GRANTS** Defendant's Motion for Summary Judgment regarding FEHA

8    discrimination claims on the basis of gender, pregnancy, and lactation.

9                        **g.    FMLA Claims**

10        Plaintiff brings two causes of action pursuant to the FMLA, one alleging retaliation and

11   one alleging interference.  ECF No. 1 ¶¶ 144-154.  Defendant argues that Plaintiff's FMLA

12   interference claim fails because there was no violation, and, alternatively, there was no prejudice.

13   ECF No. 64 at 23-24.  Defendant also argues that Plaintiff's FMLA retaliation claim fails on the

14   same basis as her other retaliation claims.

15        "The FMLA creates two interrelated, substantive employee rights: first, the employee has a

16   right to use a certain amount of leave for protected reasons, and second, the employee has a right

17   to return to his or her job or an equivalent job after using protected leave." *Bachelder v. Am. W.*

18   *Airlines, Inc.*, 259 F.3d 1112, 1122 (9th Cir. 2001).  The FMLA sets forth two ways to protect

19   these rights.  *See id.*  29 U.S.C. § 2615(a)(2) makes it unlawful for an employer to discriminate

20   against someone who opposes any practice made unlawful by the FMLA, also known as a

21   retaliation claim.  29 U.S.C. § 2615(a)(1) makes it "'unlawful for any employer to interfere with,

22   restrain, or deny the exercise of or the attempt to exercise' the substantive rights guaranteed by

23   FMLA." *Sanders v. City of Newport*, 657 F.3d 772, 777 (9th Cir. 2011) (quoting 29 U.S.C. §

24   2615(a)(1)).  Identical standards apply to the FMLA and CFRA.  *See Escriba v. Foster Poultry*

25   *Farms, Inc.*, 743 F.3d 1236, 1242 (9th Cir. 2014); *Xin Liu v. Amway Corp.*, 347 F.3d 1125, 1138

26   (9th Cir. 2003).

27                        **i.    FMLA Interference**

28        The FMLA makes it unlawful for an employer to "interfere with, restrain, or deny the

1   exercise of or the attempt to exercise, any right provided" by the Act. *Bachelder*, 259 F.3d at 1122

2   (quoting 29 U.S.C. § 2615(a)(1)). "To prevail on a FMLA interference claim, an employee must

3   establish that '(1) [s]he was eligible for the FMLA's protections, (2) [her] employer was covered

4   by the FMLA, (3) [s]he was entitled to leave under the FMLA, (4) [s]he provided sufficient notice

5   of [her] intent to take leave, and (5) [her] employer denied [her] FMLA benefits to which [s]he

6   was entitled.'" *William v. Morrison & Foerster LLP*, No. 18-CV-02542-JSC, 2021 WL 3012739,

7   at *6 (N.D. Cal. Mar. 12, 2021) (quoting *Sanders*, 657 F.3d at 778).

8                             **(i)      January 6, 2020 Training**

9           Employer actions that "deter employees' participation in protected activities constitute

10  'interference' or 'restraint' with the employees' exercise of their rights." *Bachelder*, 259 F.3d at

11  1124. "[T]he inquiry for interference is whether the employer's conduct makes an employee 'less

12  likely to exercise their FMLA leave rights [because] they can expect to be fired or otherwise

13  disciplined for doing so.'" *Olson v. United States by & through Dep't of Energy*, 980 F.3d 1334,

14  1338 (9th Cir. 2020) (quoting *id.* at 1124). "In interference claims, the employer's intent is

15  irrelevant to a determination of liability." *Sanders*, 657 F.3d at 778. "[A]n employer has

16  discouraged an employee from taking FMLA leave when his or her supervisor interferes with the

17  length and dates of leave, including denying leave out right." *Xin Liu*, 347 F.3d at 1134.

18          There is a material dispute as to whether Payne interfered with Plaintiff's FMLA by

19  pressuring her to come in and teach on January 6, 2020, despite her intention to take FMLA leave

20  during this period. *See* S. Perata Dep. 134:10-135:9. According to Plaintiff, Payne told her that

21  she needed to come teach the class, and that he did not "want to make any waves." *Id.* While the

22  Court does not consider Payne's statement to rise to the level of adverse action, a jury could

23  conclude that Payne interfered with her dates of leave or deterred her from taking the leave. *See*

24  *Yvette Jackson v. Kaiser Found. Hosps.*, No. CV188176DSFPLAX, 2020 WL 6162802, at *5

25  (C.D. Cal. Sept. 29, 2020) ("A jury could conclude that Defendants' denial and then subsequent

26  request that Plaintiff take leave at a different time than she requested was itself an interference

27  with Plaintiff's rights."); *Williams v. Shenango, Inc.*, 986 F. Supp. 309, 321 (W.D. Pa. 1997)

28  ("[S]uggestion that Williams take leave on a different week" could be construed as interference

1    with FMLA rights).

2    ### (ii)    Transfer to Station 49

3    Plaintiff also argues that Defendant retaliated against her decision to take FMLA leave by

4    transferring her to Station 49.  ECF No. 94 at 11.  "[W]hen a plaintiff alleges retaliation for

5    exercise of FMLA rights, that claim is properly analyzed as an interference claim under section

6    2615(a)(1)."  *Rivera v. FedEx Corp.*, No. C 12-1098 PJH, 2013 WL 6672401, at *6 (N.D. Cal.

7    Dec. 18, 2013) (citing *Bachelder*, 259 F.3d at 1124).  "The right to reinstatement guaranteed by 29

8    U.S.C. § 2614(a)(1) is the linchpin of the entitlement theory because the FMLA does not provide

9    leave for leave's sake, but instead provides leave with an expectation that an employee will return

10   to work after the leave ends. . . .  [E]vidence that an employer failed to reinstate an employee who

11   was out on FMLA leave to her original (or an equivalent) position establishes a prima facie denial

12   of the employee's FMLA rights."  *Sanders*, 657 F.3d at 778 (quotations omitted).  "To prevail on a

13   FMLA interference claim, an employee must establish that '(1) [s]he was eligible for the FMLA's

14   protections, (2) [her] employer was covered by the FMLA, (3) [s]he was entitled to leave under

15   the FMLA, (4) [s]he provided sufficient notice of [her] intent to take leave, and (5) [her] employer

16   denied [her] FMLA benefits to which [s]he was entitled.'"  *William*, 2021 WL 3012739, at *6

17   (quoting *Sanders*, 657 F.3d at 778).

18   There does not appear to be any contention as to the first four elements.  For the last

19   element, the Court finds that there is a triable issue of fact whether Plaintiff was denied FMLA

20   benefits to which she was entitled.  An "employee has a right to return to his or her job or an

21   equivalent job after using protected leave."  *Bachelder*, 259 F.3d at 1122.  The FMLA defines an

22   "equivalent position" as "one that is virtually identical to the employee's former position in terms

23   of pay, benefits and working conditions, including privileges, perquisites, and status.  It must

24   involve the same or substantially similar duties and responsibilities, which must entail

25   substantially equivalent skill, effort, responsibility, and authority."  29 C.F.R. § 825.215(a).  "The

26   employee is ordinarily entitled to return to the same shift or the same or an equivalent work

27   schedule."  29 C.F.R. § 825.215(e)(2).  The record indicates that Plaintiff's work schedule

28   changed when she was transferred to Station 49.  *See* S. Perata Dep. 143:11-21.  Plaintiff noted

United States District Court
Northern District of California

that Treasure Island is "very 9:00 to 5:00" with holidays and weekends off, whereas Station 49 "involved weekends and rotations and 12-hour shifts." *Id.* While the Court does not conclude such a change rises to the level of an adverse employment action, the Court finds that a jury could conclude such a transfer was not "virtually identical" in its working conditions and thus was not an "equivalent position" within the meaning of the FMLA.[16] Defendant argues, essentially, that because Plaintiff was moved after she received a promotion it cannot be said that Defendant interfered with her FMLA rights. ECF No. 64 at 24. However, the Defendant has not put forth evidence that Plaintiff's transfer was a necessary part of her promotion. As such, the Court does not consider the fact that she was conditionally promoted and then transferred to be dispositive.

It is also possible to bring a claim for interference with FMLA alleging the employer "*use[d] the taking of FMLA leave as a negative factor in employment actions,* such as hiring, promotions or disciplinary actions." *Bachelder*, 259 F.3d at 1122 (quoting 29 C.F.R. § 825.220(c)) (emphasis in original). "[I]f an employer uses an employee's taking of FMLA leave as a 'negative factor' in making 'adverse employment decisions,'. . . the employer interferes with the employee's exercise of FMLA rights." *Jadwin v. Cty. of Kern,* 610 F. Supp. 2d 1129, 1159 (E.D. Cal. 2009) (quoting *Bachelder*, 259 F.3d at 1122-23). However, the Court has already concluded that Plaintiff's transfer to Station 49 does not constitute an adverse action and thus does not consider Plaintiff's interference claim under this rubric.

### (iii)   Remedy

Defendant also argues that, even if there was interference with Plaintiff's FMLA rights, Plaintiff has not shown that she was prejudiced by the violation and thus cannot sustain such a claim. ECF No. 64 at 23-24; *see also Ragsdale v. Wolverine World Wide, Inc.*, 535 U.S. 81, 89 (2002) ("[FMLA] provides no relief unless the employee has been prejudiced by the violation.").

---

[16] The Court also notes that Plaintiff's Opposition suggests that Plaintiff's commute was much further for Station 49. *See* ECF 94 at 11. Increased commute could suggest the position is not equivalent. *See* 29 C.F.R. § 825.215(e)(1) ("The employee must be reinstated to the same or a geographically proximate worksite (i.e., one that does not involve a significant increase in commuting time or distance) from where the employee had previously been employed."). However, the evidence cited by Plaintiff in support pertains far more to Plaintiff's spouse and does not support Plaintiff's contention. *See* AMF 217; G. Perata Dep. 186:7-16.

United States District Court
Northern District of California

1   Plaintiff fails to address Defendant's argument in her opposition and thus concedes it. *See Linder*

2   *v. Golden Gate Bridge, Highway & Transp. Dist.*, No. 4:14-CV-03861 SC, 2015 WL 4623710, at

3   *4 (N.D. Cal. Aug. 3, 2015) ("[F]ailure to respond in an opposition brief to an argument put

4   forward in an opening brief constitutes waiver or abandonment . . . .") (quoting *Stichting*

5   *Pensioenfonds ABP v. Countrywide Fin. Corp.*, 802 F. Supp. 2d 1125, 1132 (C.D. Cal. 2011)).

6   Further, Plaintiff does not appear to contest that she received payment for the January 6, 2020

7   training, *see* SOF No. 65, and that she took all of her FMLA and other paid leave in 2020. SOF

8   195. The Court thus finds Plaintiff cannot sustain her FMLA claim related to January 6, 2020 as

9   there is no indication of prejudice.

10   With regard to Plaintiff's transfer to Station 49, however, FMLA does provide for

11   "appropriate" equitable relief, including employment, reinstatement, and promotion. *See* 29

12   U.S.C. § 2617(a)(1)(B). Plaintiff does seek injunctive relief in her Complaint. *See* ECF No. 1 at

13   66. While it is unclear if Plaintiff is seeking to return to Treasure Island,[17] in an abundance of

14   caution, the Court will permit Plaintiff's interference claim regarding the transfer to Station 49 to

15   move forward.

16   Accordingly, the Court **DENIES** Defendant's Motion for Summary Judgment as to FMLA

17   interference claim as the Court has narrowed it.

### ii.    FMLA Retaliation

19   Under 29 U.S.C. § 2615(a)(2), "[i]t shall be unlawful for any employer to discharge or in

20   any other manner discriminate against any individual for opposing any practice made unlawful"

21   by the FMLA. "Under the FMLA, to make a prima facie showing, a plaintiff must establish that

22   '(1) [s]he engaged in a protected activity under the FMLA; (2) [s]he suffered some adverse

23   employment action by the employer following the protected activity; and (3) the adverse

24   employment action was causally linked to the protected activity.'" *Yphantides v. Cty. of San*

---

[17] Defendant argues that Plaintiff affirmatively stated she did not want to return to Treasure Island. ECF No. 64 at 24. However, as Defendant acknowledges in SOF 163, Plaintiff did not want to return because she felt she had been harassed there. The Court has found a triable question of material fact on that point. Accordingly, her prior unwillingness to return to Treasure Island during a period of alleged harassment does not moot this issue.

43

1   *Diego*, No. 21CV1575-GPC(BLM), 2023 WL 2438916, at *15 (S.D. Cal. Mar. 9, 2023) (quoting

2   *Browett v. City of Reno*, 237 F. Supp. 3d 1040, 1046 (D. Nev. 2017)).  The Court finds that

3   Plaintiff's cause of action for retaliation based on complaints related to her FMLA leave fails for

4   the same reason that Plaintiff's FEHA retaliation claim fails.  Plaintiff does not raise a triable fact

5   as to pretext for the disciplinary proceedings and revocation of her promotion.  Accordingly, the

6   Court **GRANTS** Defendant's Motion for Summary Judgment as to Plaintiff's cause of action for

7   FMLA retaliation.

8               **h.      Failure to Reasonably Accommodate Pregnancy Claim under Cal.
                          Gov't. Code § 12945(a) and § 12945(a)**

9

10          Plaintiff brings a cause of action alleging violation of Cal. Gov't. Code § 12945(a) and §

11  12945.2 based on failure to accommodate Plaintiff's leave related to her pregnancy.  ECF No. 1 ¶¶

12  230-238.  "CFRA is a portion of FEHA that provides 'protections to employees needing family

13  leave or medical leave.'"  *Dudley v. Dep't of Transp.*, 90 Cal. App. 4th 255, 260 (2001) (quoting

14  *Gibbs v. Am. Airlines, Inc.*, 74 Cal. App. 4th 1, 6 (1999)).  The parties do not distinguish in their

15  briefing between interference with FMLA rights and violation of § 12945.2 related to parental

16  leave.  California state courts as well as the Ninth Circuit have treated the substance of the claims

17  as identical.  *See Aguirre v. California*, No. 16-CV-05564-HSG, 2017 WL 5495953, at *14 (N.D.

18  Cal. Nov. 16, 2017) (collecting cases), *on reconsideration in part,* No. 16-CV-05564-HSG, 2018

19  WL 1948702 (N.D. Cal. Apr. 25, 2018).  Thus, the Court applies the same analysis to Plaintiff's

20  failure to reasonably accommodate pregnancy claim as it did to her FMLA interference claim.

21  However, the Court also notes that Defendant did not argue that the state law claim has the same

22  limitations as FMLA with regard to prejudice.  There is also at least some case law indicating the

23  remedies available under CFRA are broader than FMLA.  *See Taylor v. Trees, Inc.*, 58 F. Supp. 3d

24  1092, 1103 (E.D. Cal. 2014) (contrasting emotional distress available in CFRA claim but not

25  FMLA claim).  Because the issue has not been briefed, the Court declines to limit Plaintiff's claim

26  for failure to reasonably accommodate under § 12945(a) and § 12945.2 in the same manner it did

27  Plaintiff's FMLA claim.

28          Accordingly, the Court **DENIES** Defendant's Motion for Summary Judgment as to

44

Plaintiff's Failure to Reasonably Accommodate Pregnancy Claim.

### i.      FLSA Retaliation Claim

Plaintiff raises a cause of action based on retaliation under the FLSA.  ECF No. 1 ¶¶ 163-170.  Defendant argues in favor of summary judgment on the same bases as to Plaintiff's other retaliation claims, and Plaintiff opposes on the same.

Under 29 U.S.C. § 215(a)(3), it is unlawful to discriminate against an employee because she has filed a complaint alleging inadequate breastfeeding accommodations in the workplace pursuant to the statute.  "To establish a claim of retaliation under Section 15(a)(3) of the FLSA, a plaintiff must allege that (1) [s]he engaged activity protected by the FLSA; (2) [s]he suffered an adverse employment decision; and (3) there was a causal link between the protected activity and the adverse employment action."  *James v. San Francisco Unified Sch. Dist.*, No. 18-CV-04448-YGR, 2018 WL 4635640, at *4 (N.D. Cal. Sept. 27, 2018).  "In analyzing FLSA retaliation claims, we apply the shifting burden of proof scheme initially articulated in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792 (1973)."  *Conner v. Schnuck Markets, Inc.*, 121 F.3d 1390, 1394 (10th Cir. 1997); s*ee also Williams v. Robert Half Int'l Inc.*, No. 4:20-CV-03989-KAW, 2022 WL 377014, at *5 (N.D. Cal. Feb. 8, 2022).  The Court finds Plaintiff's FLSA retaliation claim fails on the same basis as Plaintiff's FEHA retaliation claim.  Namely, Plaintiff's FLSA retaliation claim fails because she does not raise a triable issue as to whether Defendant's actions were pretextual or performed with retaliatory animus.

Accordingly, the Court **GRANTS** Defendant's Motion for Summary Judgment as to Plaintiff's claim of retaliation under FLSA.

### j.      FLSA Lactation Accommodation Claim

Plaintiff brings a cause of action under 29 U.S.C. 207(r) based on failure to provide lactation accommodations.  ECF No. 1 ¶¶ 156-162.  Defendant argues that Plaintiff cannot prevail on her claim pursuant to 29 U.S.C. 207(r) because the only remedy is lost wages.[18]  ECF No. 64 at

---

[18]  Effective December 29, 2022, 29 U.S.C. 207(r) has been moved to its own statutory section as 29 U.S.C. § 218d.  The statutory provision related to damages has also been amended.  29 U.S.C. § 216.  This damages provision was effective April 28, 2023.  *See U.S. Department of Labor, Wage and Hour Division, Fact Sheet #73: FLSA Protections for Employees to Pump Breast Milk*

United States District Court
Northern District of California

1   24-25.  "[T]he only remedy for a violation of Section 207(r) is for unpaid minimum or overtime

2   wages."  *Mayer v. Pro. Ambulance, LLC*, 211 F. Supp. 3d 408, 414 (D.R.I. 2016).  Plaintiff fails to

3   address Defendant's argument in her opposition and thus concedes it.  *See Linder*, 2015 WL

4   4623710, at *4 ("[F]ailure to respond in an opposition brief to an argument put forward in an

5   opening brief constitutes waiver or abandonment . . . .") (quoting *Stichting*, 802 F. Supp. 2d at

6   1132).  Further, Plaintiff does not cite to evidence in the record that Plaintiff incurred unpaid

7   minimum or overtime wages due to lactation issues in 2020.

8       Accordingly, the Court **GRANTS** Defendant's Motion for Summary Judgment for

9   Plaintiff's cause of action based on violation of 29 U.S.C. 207(r).

10                    **k.    FEHA Lactation Accommodation Claim**

11      Plaintiff also bring a cause of action based on failure to provide lactation accommodations

12   under California Government Code § 12945(a)(3)(A).  ECF No. 1 ¶¶ 239-251.  Defendant argues

13   that Plaintiff was provided sufficient accommodations.  ECF No. 64 at 24-25.

14      "The language of section 12945(a)(3)(A) requires a successful plaintiff to prove at least

15   three things: (1) that her employer 'refuse[d] to provide a reasonable accommodation,' (2) 'for a

16   condition related to pregnancy, childbirth, or a related medical condition,' (3) when the employee

17   'so request[ed], with the advice of [her] health care provider.'"  *Lopez v. La Casa De Las Madres*,

18   89 Cal. App. 5th 365, 380 (2023).  "'[A] condition related to pregnancy, childbirth, or a related

19   medical condition,' as set forth in Government Code section 12945, means a physical or mental

20   condition intrinsic to pregnancy or childbirth that includes, but is not limited to, lactation."  Cal.

21   Code Regs. tit. 2, § 11035.  "An employer shall provide an employee with the use of a room or

22   other location for the employee to express milk in private. . . .  A lactation room or location shall

23   not be a bathroom and shall be . . . shielded from view, and free from intrusion while the employee

24   is expressing milk."  Cal. Lab. Code § 1031(a)-(b).

25      Defendant argues that Plaintiff was provided a with reasonable accommodation for

27   *at Work,* Revised January 2023, https://www.dol.gov/agencies/whd/fact-sheets/73-flsa-break-time-nursing-mothers.  Neither party addresses the statutory amendments, and the Court does not
28   understand them to be retroactive.  Thus, the Court refers to 29 U.S.C. 207(r) and 29 U.S.C. § 216 as they were effective prior to this amendment.

1   lactation because, even if the primary room identified for lactation did not have a lock, Plaintiff

2   had access to other facilities that had locking doors.  ECF No. 64 at 24.  However, whether an

3   accommodation is reasonable is generally a question for a jury.  *See Gonzales v. Marriott Int'l,*

4   *Inc.*, 142 F. Supp. 3d 961, 979 (C.D. Cal. 2015) (finding whether defendant had provided

5   reasonable accommodations for plaintiff's lactation was a question for the jury); *U.S. EEOC v.*

6   *UPS Supply Chain Sols.*, 620 F.3d 1103, 1110 (9th Cir. 2010) ("The reasonableness of an

7   accommodation is ordinarily a question of fact.").  There is a dispute whether the designated

8   lactation room in Station 49 had a lock on it during the relevant period.  *See* S. Perata Dep.

9   154:25-155:6.  Defendant provides evidence that there was another door between that room and a

10  hallway that Plaintiff could have locked for privacy.  *See* Tong Declaration ¶ 10.  However,

11  Plaintiff testified that the hallway saw traffic as it had lockers used by male officers.  S. Perata

12  Depo 156:7-157:5.  Chief Tong states in her declaration that Plaintiff had access to a classroom

13  with a lock on the door.  *See* Tong Declaration ¶ 10.  However, Plaintiff testified that after she was

14  walked in on while using the captain's room she would occasionally go downstairs and ask to use

15  another officer's room.  S. Perata Depo 161:24-162:12.  Drawing all inferences in Plaintiff's favor,

16  it is reasonable to infer that if Plaintiff had access to a classroom that reasonably accommodated

17  her lactation, she would not have sought out the officer's room and asked the officer to stand

18  outside.  *Id.*

19         In sum, the Court finds a sufficient factual dispute as to the reasonableness of the

20  accommodations.  Accordingly, the Court **DENIES** Defendant's Motion for Summary Judgment

21  as to Plaintiff's cause of action under § 12945(a)(3)(A).

22                           **l.      Failure to Prevent Discrimination or Harassment**

23         Plaintiff also alleges a cause of action under FEHA for failure to prevent employment

24  discrimination and harassment.  ECF No. 1 ¶¶ 209-19.  Cal. Gov't. Code § 12940(k).  Defendant

25  argues this claim fails because Plaintiff's discrimination and harassment claims fail.  ECF No. 64

26  at 25; *see Trujillo v. N. Cty. Transit Dist.*, 63 Cal. App. 4th 280, 288-89 (1998), *as modified* (May

27  12, 1998) ("We do not believe the statutory language supports recovery on such a private right of

28  action where there has been a specific factual finding that no such discrimination or harassment

United States District Court
Northern District of California

actually occurred at the plaintiff's workplace.").  As Plaintiff's harassment claim survives, the Court finds so does Plaintiff's failure to prevent harassment claim.  Accordingly, the Court **DENIES** Plaintiff's Motion for Summary Judgment as to Plaintiff's failure to prevent discrimination or harassment claim.

## V.    CONCLUSION

Based on the analysis above, the Court hereby:

1) **GRANTS** Plaintiff's Motion to Remove, and orders ECF No. 83 and ECF No. 84 be removed from the docket in their entirety;

2) **GRANTS** Defendant summary judgment to the extent that Plaintiff's claims seek a remedy for Plaintiff's 2010 denial of promotion and her FMLA issues from 2010 through 2014;

3) **GRANTS** Defendant summary judgment on Plaintiff's claim pursuant to Labor Code § 1102.5;

4) **GRANTS** Defendant summary judgment on Plaintiff's claims pursuant to 42 U.S.C. § 1983;

5) **DENIES** summary judgment on Plaintiff's hostile work environment gender, lactation, and pregnancy harassment claims;

6) **GRANTS** Defendant summary judgment on Plaintiff's FEHA retaliation claim;

7) **GRANTS** Defendant summary judgment regarding FEHA discrimination claims on the basis of gender, pregnancy, and lactation;

8) **DENIES** summary judgment on Plaintiff's FMLA interference claim as the Court has narrowed it;

9) **GRANTS** Defendant summary judgment on Plaintiff's FMLA retaliation claim;

10) **DENIES** summary judgment on Plaintiff's failure to reasonably accommodate pregnancy claim under § 12945(a), § 12945.2;

11) **GRANTS** Defendant summary judgment on Plaintiff's FLSA retaliation claim;

12) **GRANTS** Defendant summary judgment on Plaintiff's claim pursuant to 29 U.S.C. 207(r);

13) **DENIES** summary judgment on Plaintiff's claim pursuant to § 12945(a)(3)(A); and

48

1    14) **DENIES** summary judgment on Plaintiff's failure to prevent discrimination or

2  harassment claim.

3       **IT IS SO ORDERED.**

4

5  Dated:  July 13, 2023

6

7       THOMAS S. HIXSON
         United States Magistrate Judge

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

United States District Court
Northern District of California

49